# Wheeling.

## McClaskey & Crim *et al.* v. O'Brien *et al.*

### AND

## Hart, use &c. v. O'Brien *et al.*

### Decided December 20, 1879.

1. When exceptions to a report of a commissioner are filed in a cause, ordinarily the clerk should endorse thereon the time when filed, or otherwise something should appear by which the Appellate Court may be able to identify the exceptions passed upon by the court below. But for the purpose of identifying the exceptions the Appellate Court may look into the whole record.

2. If a judgment is obtained which is a lien on the lands of the judgment-debtor, and the judgment-debtor sells and conveys part of it, generally the judgment-debtor should be required in the first instance to exhaust the unsold portion.

3. Generally where land subject to an encumbrance is sold successively in parcels, each of them will be liable in the inverse order of alienation. To this general rule there are exceptions under circumstances.

4. When a conveyance of part of the judgment-debtor's land covered by an encumbrance contains a covenant of warranty, such covenant is generally taken as *prima facie* evidence of the contract of the vendor and the vendee that the burden of the encumbrance should be borne exclusively by the residue of the lands. And perhaps where there is not a covenant of general warranty, the same rule should prevail, unless there is evidence of an opposite design.

5. But when there is a covenant of general warranty, if the vendee of a part of the lands covered by an encumbrance agrees in terms or by implication, to be answerable for the encumbrance-debt in consideration of a corresponding deduction from the purchase-money, the equity is reversed.

6. If one of two or more tracts of land, which are subject to a judgment-lien, be sold and conveyed by the judgment-debtor, and the deed

| | |
|---|---|
| 16 | 791 |
| 42 | 330 |
| 16 | 791 |
| 46 | 316 |
| f46 | 667 |
| 16 | 791 |
| 48 | 357 |

1879
Special Term.

McClaskey &
Crim *et al.*
v.
O'Brien *et al.*

| | |
|---|---|
| 16 | 791 |
| f50 | 166 |
| 16 | 791 |
| 51 | 582 |
| 16 | 791 |
| 56 | 290 |
| 16 | 791 |
| 62 | 438 |
| 16 | 791 |
| 65 | 620 |

1879
Special Term.

McClaskey &
Crim *et al.*
v.
O'Brien *et al.*

has been duly recorded and the purchase-money paid, a subsequent judgment-creditor is not entitled to subrogation to the prior lien, because such a decree would conflict with the equity of the purchaser. And in such case, where the land sold is subject to an encumbrance which is also a charge on other land belonging to the vendor, and the land is sold with an express or implied agreement that the title shall be clear, the vendee is not liable to contribution. It is the duty of the vendor, who has been paid in full, to discharge an encumbrance on the land, and if the lien extends to other land, that and not the land conveyed is the primary fund for the payment of the debt.

7. Marshalling should not be enforced to the prejudice of a third party. As subrogation is an equity, it will not be enforced when the effect will be to prejudice or impair the rights of third persons, it being well settled that where both parties have an equal claim to the consideration of a chancellor, the law will be suffered to take its course.

8. As between the judgment-creditor and debtor the statute requiring the judgment to be docketed has no application or force.

9. Section five of chapter one hundred and thirty nine of the Code of this State of 1868, gives a positive express lien of a judgment against all the lands, to which the debtor shall be possessed or entitled, at or after the date of such judgment, or if it was rendered in court, at or after the commencement of the term at which it was so rendered, excepting the exceptions made in said chapter; and such lien continues until it is in some manner discharged or lost; and the same under sixth section of the one hundred and eighty sixth chapter of the Code of Virginia of 1860.

10. When various judgments are rendered against a debtor, and the junior judgments are docketed, and the senior undocketed, and in this state of things the debtor conveys a part of the land to a purchaser for valuable consideration without notice of the undocketed judgments, and the docketed judgment-liens are not discharged, the liens of the undocketed judgments must be discharged out of the proceeds of the unsold lands, although the effect might be to require the holders of the docketed judgments to resort in whole or in part to the land so conveyed for satisfaction of their judgment-liens.

11. Section seven of chapter one hundred and thirty nine of said Code of 1868 was enacted mainly for the protection of purchasers for valuable consideration without notice of judgments; but that protection only extends to the land so conveyed to such purchaser, it being liable for the satisfaction of judgments of which the purchaser had notice, or which were docketed according to law, and to such judgments only; and so of section eight of chapter one hundred and eighty six of the Code of Virginia of 1860.

12. When there are various judgment liens on lands of a judgment-debtor, it is error to decree a sale of the lands without ascertaining the amount of the liens and their priorities; and this should be done in an intelligible manner. And where the court in the *fore-part* of its decree does ascertain the amounts of the several liens and their respective priorities, and then in the same decree orders a sale of the land, and then on the face of the decree reserves to itself the right to marshal the proceeds of the sale among the creditors, if necessary, according to the interest of the respective creditors, it is ordinarily error.

1879
Special Term.

McClaskey &
Crim *et al.*
v.
O'Brien *et al.*

13. Generally, where a deed of trust creditor purchases the land conveyed in trust from the deed of trust debtor, and such debtor conveys the land to such purchaser, which deed is duly recorded, the deed of trust will be upheld as a subsisting lien thereon, for the debt and interest thereby secured, for the protection of the deed of trust creditor, to the extent of such debt and interest, against an intervening title or intervening judgment creditors, unless injustice would be done thereby.

14. In such case an extinguishment of the deed of trust lien and debt will not be presumed against the equities of the parties.

15. The general rule of law between parties is, that when a contract is avoided for any cause, each is returned to his previously existing rights.

16. E. J. O'B. executed a deed of trust upon two hundred acres of land in Barbour county, part of a larger tract, to a trustee to secure a debt to R; afterwards H., who held a deed of trust upon the larger tract including the said two hundred acres, purchased of said E. J. O'B. the entire tract including said two hundred acres, and E. J. O'B. made to H. a general warranty-deed for the land by him so purchased, and H. properly applied a part of the purchase-money to the payment of the deed of trust debt of said R. and paid the residue. About seven years after the commencement of these suits, and over a year after a decree had been rendered therein by the court declaring the said debt of R. a paramount lien on said two hundred acres, R. executed a release of his said deed of trust, which was admitted to record in said county. If H. released and extinguished the said debt of R. with the lien thereof by such payment for all purposes and in any event, and it clearly appeared that such was the intention of the parties at the time, and a release was executed by R., then perhaps H. might not be entitled to the benefit of the lien of R.'s deed of trust debt for his protection in a court of equity against intervening judgment-debts; but unless it does so clearly appear, then in a court of equity, under the circumstances appearing, H. is entitled to be regarded as a purchaser of said R.'s trust-deed and the lien thereof, or to the benefit of it for his protection to the amount thereof with its interest against such

100

1879
Special Term.

McClaskey &
Crim *et al.*
v
O'Brien *et al.*

intervening judgment-creditors, it not appearing that injustice would thereby be done.

17. A deed of trust creditor is entitled to be held a purchaser for value within the meaning of the statute in relation to docketing judgments.

18. H. brings his suit in equity and files his bill therein in his own name for the use and benefit of L., and L. is not made a party to the suit. HELD :

> That while this mode of bringing suits at law for well known reasons is allowed and recognized in a class of cases at least, still it is not allowed in equity, as the general rule in equity is, that all persons materially interested in the subject-matter of the suit should be made parties thereto. This case is not an exception to the general rule ; and the bill was demurrable

19. It is not proper in a decree of sale of land to direct that such sale shall be made "*on some day fixed by law for judicial sales*," there being no day fixed by law for judicial sales. But perhaps this may not be fatal to the decree.

20. It is irregular and dangerous in practice for the court to authorize its special commissioner, appointed for the purpose, to sell lands for cash in hand, in whole or in part, without requiring such commissioner in its decree to give bond with good personal security before receiving any money, in an adequate prescribed penalty conditioned according to law.

Appeal from and *supersedeas* to a decree of the circuit court of the county of Barbour, rendered on the 17th day of April, 1871, in two causes in said court then pending, in one of which McClaskey and others were plaintiffs, and O'Brien and others were defendants, and in the other Hart for use of Lowds was plaintiff, and O'Brien and others were defendants, allowed upon the petition of said defendants.

Hon. Thomas W. Harrison, late judge of the sixth judicial circuit, rendered the decree appealed from.

The facts of the case are fully stated in the opinion of the court.

*G. D. Camden,* for appellants, cited the following authorities:

5 Paige 539; 6 Paige 584; Story Eq. Pl. § 154; 2 Gratt. 394; 10 Wall. 302; 56 N. Y. 214; 29 Barb. 156;

1879
Special Term.

McClaskey &
Crim *et al.*
v.
O'Brien *et al.*

36 N. Y. 520; 12 Peck 126; 22 How. 270; 13 Pet. 309: 2 Cush. 462; 11 Cush. 352; 2 Gratt. 387.

*Albert G. Reger*, for appellees, relied on the following authorities:

4 Rand. 208; Story Eq. Pl. § 392; Code p. 476 §§ 4, 5; 3 Rob. 165; 2 H. & M. 420; 8 Gratt. 289; 1 H. & M. 204; 2 Leigh 280; Code p. 666 § 5.

HAYMOND, JUDGE, delivered the opinion of the Court:

These are suits in equity brought and prosecuted in the circuit court of the county of Barbour. The suits were commenced on the —— day of ——, 1860; and the original bills were filed the same year. The plaintiffs in the first named case state in their bill the name of each member of their said firm. They allege that at the spring term, 1858, of the circuit court of Barbour county they, in their firm name, recovered a judgment against Emmitt J. O'Brien and Daniel O'Brien, partners in business under the firm name and style of E. J. & D. O'Brien, for the use and benefit of Elias B. Long, Jasper L. Long and John W. Slagle, merchants and partners trading under the firm name and style of E. B. Long & Co., for the sum of $547.59, with interest thereon from the 14th day of October, 1857, until paid, and the costs of suit, which are $8.99. The plaintiffs in their said bill say they file therewith a copy of said judgment as an exhibit marked "A"; that a writ of *fi. fa.* was duly issued upon said judgment and placed in the hands of the sheriff of said county to be levied, and by him duly returned, &c.

The bill also alleges that the said Emmitt J. O'Brien was at the rendition of said judgment the owner of a valuable tract of land, situated in said county on the east side of Buckhannon river adjoining lands of Isaac House and Kinsey Ward, containing about six hundred acres and being the same land granted by the Commonwealth of Virginia to Daniel O'Brien, and conveyed to the said Emmitt J. O'Brien by Eli Butcher by deed of record in

1879
Special Term.

McClaskey &
Crim et al.
v
O'Brien et al.

the clerk's office of said county; that said grant for said land to the said O'Brien is dated the 20th of September, 1811; that said Emmitt J. O'Brien did on the 6th day of October, 1856, convey two hundred acres of said land to A. G. Reger, trustee, in trust to secure the payment of $600.00 to Anthony Reger payable twelve months thereafter, which said deed is of record in the clerk's office of said county; that the said Emmitt J. O'Brien did on the 8th day of May, 1857, execute to Lewis Wilson, trustee, a deed of trust conveying to him the said land above described to secure to Henson L. Hoff the payment of the sum of $——, with interest from the 11th day of ——, 1857, which deed is of record, &c.; that the said Emmitt J. O'Brien did on the 13th of July, 1859, fraudulently sell and convey said above described land to Hanson L. Hoff, by deed of that date which is also duly recorded, &c.

The bill also alleges, that the said Emmitt J. O'Brien and Daniel O'Brien are the owners of a tract of land purchased by them on the 1st day of October, 1857, from John Davis Day situated in the county of Upshur, the bill stating the metes and bounds thereof; that said Day at the time of said sale executed to the said O'Briens a title-bond, binding himself to convey said land to them by deed of general warranty upon the payment of the purchase-money; that said Day at the time of said sale placed the said O'Briens in possession of said land, and that the legal title to the same is still in the said Day, and that the whole of said purchase-money is yet due the said Day except the sum of $646.72, which was paid in a claim on the board of public works assigned by said O'Briens to said Day some time in March, 1860; that said Daniel O'Brien was at the rendition of said judgment, and still is, the owner of a tract of land patented to him by the commonwealth of Virginia, situated in the counties of Barbour and Upshur, on the Middlefork river (the bill states the boundaries) containing seven hundred and sixty-five acres. The bill admits, that the

1879
Special Term.

McClaskey &
Crim *et al.*
v.
O'Brien *et al*

said O'Briens paid on said judgment on the 25th day of October, 1858, the sum of $400.00.

The bill also alleges, that said O'Briens are insolvent and have no personal estate out of which their judgment could be made; that an abstract of said judgment was duly docketed in the county court of said county within twelve months next after the rendition thereof. The plaintiffs profess in the bill to file a copy of the said docketing with their bill. The bill also alleges, that the said Hoff had full notice of said judgment when he purchased said land from said Emmitt J. O'Brien, and that the said Hoff and O'Briens have confederated together to cheat, defraud and delay plaintiffs in the collection of said judgment, &c. The bill prays for such sale as plaintiffs are entitled to, and makes the said O'Briens, Hoff, Anthony Reger, A. G. Reger, Lewis Wilson, John Davis Day, Elias B. Long, Joseph L. Long and John W. Slagle defendants thereto, and requires the said Hoff to state what is still due on his said deed of trust, and that the said Anthony Reger state what is still due upon his deed of trust; and the bill prays that the said deed from Emmitt J. O'Brien to the said Hoff be decreed fraudulent, null and void, and be set aside, and that the said lands be decreed to be sold to pay said judgment, &c.

On the 11th day of October, 1860, on notice of the plaintiffs the cause was remanded to rules with leave to the plaintiffs to amend their bill. On the first Monday in December, 1861, the plaintiffs filed an amended bill, in which they allege that the said Ellis B. Long, Joseph L. Long and John W. Slagle, merchants and partners under the firm name and style of E. B. Long & Co., in the year 1858 assigned to plaintiffs all their right, title and interest in and to the said judgment, and that said judgment is now, and was at the commencement of this suit, the property of the said plaintiffs. The same persons are made defendants to the amended as to the original bill. On the 5th day of March, 1866, the plaintiffs

1879
Special Term.

McClaskey &
Crim *et al.*
v.
O'Brien *et al.*

suggested in court the death of the defendant, John Davis Day; and on their motion a writ of *scire facias* was awarded to revive the cause against Richard H. D. Day and Virginia White, late Virginia Day, heirs at law of the said John Davis Day, and Henry O. Middleton, administrator of the said Day, deceased. It also appears by the record that the cause was revived on personal service of the *scire facias* on said Middleton, administrator, and by publication against said R. H. D. Day, and Virginia White, heirs at law of said Day, deceased. It further appears that on the 13th day of March, 1860, Ira Hart commenced his suit, on the chancery side of said circuit court for the said county of Barbour for the use of Lloyd Lownds, and that afterwards, at September rules, 1860, he filed his bill in the cause, in which he says he sues for the use of Lloyd Lownds.

The bill alleges that at the fall term, 1856, of said circuit court the plaintiffs recovered a judgment against Daniel O'Brien for the sum of $156.50, upon which execution was sued out, and a forthcoming bond given, and Emmitt J. O'Brien and John Wentz were his securities; that said forthcoming bond was executed on the 29th day of December, 1856; that afterwards, at the spring term of 1857 of said circuit court, judgment and award of execution on said bond was rendered in favor of plaintiff, Hart, for the sum of $369.02, to be discharged by the payment of $184.51 with interest thereon from the 29th day of December, 1856, until paid and $4.03 costs; that on said last named judgment and award of execution a writ of *fi. fa.* was duly issued, and placed in the hands of the sheriff of Barbour county, and by him duly returned "no property found," and that no portion of said judgment has been paid. The bill further charges that said Daniel O'Brien is the owner of a tract of land situate in the counties of Barbour and Upshur, which was surveyed and patented to him by the Commonwealth of Virginia, stating the metes and bounds, containing seven hundred and sixty-five acres; that the said Daniel and Emmitt J.

1879
Special Term.

McClaskey &
Crim *et al.*
v.
O'Brien *et al.*

O'Brien are the owners of a tract of land situated in the county of Upshur on Handy Camp run, adjoining lands of W. D. Warner and others, containing six hundred and thirty-eight and one half acres, stating the metes and bounds, purchased by the said Daniel and Emmitt J. O'Brien from John D. Day, at the price of $4 per acre, amounting to the sum of $2,553.00, payable in two equal instalments of one and two years with interest from the date of sale ; and in part payment said O'Briens assigned to said John Davis Day two claims, one for $646.72 on the Board of Public Works, and the other for the sum of $400.00 on the county of Lewis; that the said Day has received the full amount of the claim of $642.72 in March, 1860, and as to the said claim of $400.00 plaintiff is not advised whether the same has been received or not ; that said Day at the time of said sale, or shortly thereafter, executed to said O'Briens a title-bond binding himself to convey said land to them by deed of general warranty upon the payment of said purchase-money, and placed the said O'Briens in the possession thereof, and the legal title to the same is still in said John Davis Day, &c.

The bill further alleges, that at the spring term, 1858, of the circuit court of Barbour county William P. Woodruff procured a judgment against said O'Briens, as partners in business under the name and style of E. J. & D. O'Brien, in the name of John Weaver, who sued for the use of said Woodruff, for the sum of $70.82, with interest thereon from the 10th day of September, 1857, and his costs amounting to the sum of $8.39, upon which judgment a writ of *fi. fa.* was issued and placed in the hands of the sheriff of said county of Barbour and by him returned " no property found ;" that said Woodruff is dead, and Joseph Teter has been duly appointed his administrator. The bill also alleges, that the said tracts of land is all the real estate owned by said O'Briens and John Wentz, and that the same would not rent for sufficient in five years to pay said judgments and costs, and

1879
Special Term.

McClaskey &
Crim *et al.*
v.
O'Brien *et al.*

that the O'Briens and Wentz have no personal property out of which said judgments can be made by execution, and that plaintiffs, to preserve their lien on said land, procured an abstract of the said judgment, and sent the same to the clerk of the county court of Upshur county, in which a portion of said land is, to be docketed, and that the same has long since been docketed; that said judgments constitute a lien on said lands, &c.

To this bill each of said O'Briens, John Wentz, John Davis Day, John Weaver and Joseph Teter, administrator as aforesaid, are made parties; and the bill prays for the sale of said lands for the payment of said judgments. This bill does not notice or mention the tract conveyed to said Hoff.

It further appears by the record, that on the 5th day of March, 1866, the death of said Day was suggested by the plaintiff; and on his motion a *scire facias* was awarded to revive the cause against Richard H. D. Day and Virginia White, late Virginia Day, heirs at law of the said John Davis Day, and Henry O. Middleton, administrator of said Day. It appears also, that afterwards said cause was revived against said administrator by personal service and against said heirs at law of said Day, deceased, by publication. It further appears, that afterwards, on the 7th day of September, 1866, the said two causes were heard together by said circuit court upon the bill and amended bill in the first above named cause and the bill in the second cause, order of publication duly executed as to Elias B. Long, Joseph L. Long and John W. Slagle in said first cause, and as to said Richard H. D. Day and Virginia White in the second cause, and decrees *nisi* as to all the defendants in the said first and second above named causes. And the court decreed, that the cause be referred to one of its master commissioners to ascertain the several liens and their priorities on the land in said causes mentioned; also what amount of purchase-money is still due from said Emmitt J. O'Brien and Daniel O'Brien to the estate of John D.

1879
Special Term.

McClaskey &
Crim *et al*
v.
O'Brien *et al.*

Day, deceased, for the lands in the bills mentioned, and that the said commissioner report, &c. Afterwards the circuit court again heard said two causes and on the 6th day of March, 1867, made and entered the following decree therein, viz :

"These causes came on this day to be heard together upon the bill and amended bill in the first above cause, and the bill in the last above cause, former orders and decrees, and the report of master commissioner Simon Buckingham, exceptions thereto; which are overruled, and was argued by counsel; on consideration whereof it is adjudged, ordered and decreed, that said report be confirmed, it appearing from said report that the defendant, Emmitt J. O'Brien, is justly indebted to defendant Anthony Reger in the sum of $600.00, with interest thereon from the 6th day of October, 1856, and that the same constitutes a lien on the two hundred acres of the five hundred and sixty acre (560) tract of land which is first entitled to be paid, and it further appearing that the complainants' judgment in last named above cause for the sum of $184.51, with interest thereon from the 29th day of December, 1856, and $4.03 costs at law recovered against the defendant Daniel O'Brien, Emmitt J. O'Brien and John Wentz constitutes a lien on the seven hundred and sixty five acres of land, patented to Daniel O'Brien, and described in the said last cause and should be paid, and of the sale of the said last named tract of land, and that the said judgment also constitutes a lien on any surplus which may arise from the sale of the six hundred and thirty eight and one half acres of land purchased by the said E. J. and Daniel O'Brien from John Davis Day, after the payment of the purchase-money for the same hereafter mentioned ; it also appears from said report that the trust in favor of Henson L. Hoff for $2,000.00 is a lien on said five hundred and sixty acre tract, third in priority; it also appears to the court that the complainants' judgment in the first cause mentioned for the sum of $547.59, with interest thereon from the 14th day of

1879
Special Term.

McCloskey &
Crim *et al.*
v.
O'Brien *et al.*

October, 1857, and $8.99 costs at law, subject to a credit of $400.00, October 25, 1858, and the judgment of John Weaver, use of William P. Woodruff, for the sum of $70.82, with interest thereon from the 10th of September, 1857, and $8.39 costs at law, are liens on the seven hundred and sixty five acre tract of land, patented to the said Daniel O'Brien, and on the said six hundred and thirty eight and one half acre tract of land, after paying the purchase-money thereon, and the judgment of the complainant in the last above cause, and that the complainants' judgment in the first above cause also constitutes a lien on the five hundred and sixty acre tract of land conveyed by the defendant Emmitt J. O'Brien to the defendant Henson L. Hoff, next in priority after the trust in his favor. It further appears to the court that the said Emmitt J. O'Brien and Daniel O'Brien are indebted to Henry O. Middleton, administrator of John Davis Day, deceased, in the sum of $2,553.00, with interest on $1,276.50, parcel thereof, from the 1st day of October, 1858, and interest on $1,276.50, residue thereof, from the 1st day of October, 1859, subject to a credit of $646.72 paid the 1st day of March, 1860, which constitutes a vendor's lien on the six hundred and thirty eight and one half acres of land purchased by defendants O'Brien from the said John Davis Day, and should be first paid from a sale of the six hundred and thirty eight and one half acres of land. It is further adjudged, ordered and decreed that the defendant, Emmitt J. O'Brien, do pay to the defendant, Anthony Reger, the sum of $600.00, with interest thereon from the 6th day of October, 1856, and that the defendant, Emmitt J. O'Brien and Daniel O'Brien and John Wentz do pay to the complainant, Ira Hart, the sum of $188.54, with interest on $181.51 from the 29th day of December, 1856, until paid, and his costs about his suit in this behalf expended, and that the defendants Emmitt J. O'Brien and Daniel O'Brien do pay to the complainants in the first cause the sum of $556.58, with interest on $547.59 from the 14th

1879
Special Term.

McClaskey &
Crim *et al.*
v.
O'Brien *et al.*

day of October, 1857, until paid, subject to a credit of $400.00, paid 25th of October, 1858, and their costs about their suit in this behalf expended, and that the defendants, Emmitt J. O'Brien and Daniel O'Brien, do pay to defendant, Joseph Teter, administrator of William P. Woodruff, the sum of $79.21, with interest on $70.82 from the 10th of September, 1857, until paid, and that the defendants, Emmitt J. O'Brien and Daniel O'Brien, pay to the defendant, Henry O. Middleton, administrator of John Davis Day, the sum of $2,553.00, with interest on $1,276.50, parcel thereof, from the 1st day of October, 1858, and interest on $1,276.50, residue, from the 1st day of October, 1859, until paid, subject to a credit of $646.72 paid March 1, 1860; it is therefore adjudged, ordered and decreed, that unless the said Emmitt J. O'Brien and Daniel O'Brien, or some one for them, shall, within thirty days from the rendition of this decree, pay to the said Anthony Reger, to the complainant in the first cause, to the complainant in the second cause, to Joseph Teter, administrator of William P. Woodruff, deceased, and to Henry O. Middleton, administrator of John Davis Day, the amounts and costs, with the interest thereon, respectively herein decreed to them; that Albert G. Reger, who is hereby appointed a special commissioner do after having given at least thirty days notice," &c., &c., " sell the two hundred acres of land in the deed of trust mentioned, for cash in hand, and that he sell the seven hundred and sixty five acres of land patented as aforesaid to the defendant, Daniel O'Brien, and if necessary to satisfy this decree, the six hundred and thirty eight and one half acres, purchased by the defendants, O'Briens, from John Davis Day, for sufficient cash in hand to pay the costs of these suits and expenses of sale and the residue upon a credit," &c., &c. And said commissioner was required to report his proceedings to the court, &c.

It also appears that after this decree, to wit, on the 18th day of May, 1867, these causes came on again to be heard together upon the papers formerly read therein

1879
Special Term.

McClaskey &
Crim *et al.*
v.
O'Brien *et al.*

and, former orders and decrees, "and by consent of parties by their attorneys" it was decreed by the court, that the report made in these causes be recommitted to master commissioner Buckingham with directions to report the lands owned by the said Emmitt J. O'Brien and Daniel O'Brien, and the various liens thereon with their several priorities, and what liens, if any, exist on any lands sold by either of them, &c.

It further appears that afterwards, on the 2d day of September, 1868, the defendant, Hanson L. Hoff, appeared in court and with leave of the court filed his answer to the said bill of McClaskey & Crim, in which he says, that he admits having taken a deed of trust and having purchased the farm of E. J. O'Brien as alleged in the bill, but he denies the charges of fraud. He also says substantially, as I understand his answer, that in 1856-7 he was engaged in the mercantile business near Phillippi, the said firm of E. J. & D. O'Brien being at the same time engaged in bridge-building on State account, and E. J. O'Brien came to his place of business and informed him that he would not be able to carry on the aforesaid bridge-building, unless he could get aid from some party who could furnish him means, till he could get pay for his bridges or his work on the same; and that A. M. Woodford, then deputy sheriff of Barbour county, had in his hands for collection large sums against E. J. & D. O'Brien, which they were unable to pay without selling their teams, tools, &c., which were necessary in their building of the aforesaid bridges; and E. J. O'Brien proposed to him, that if he would satisfy these claims in the hands of the deputy sheriff, he would favor him with his custom, by which he would be largely recompensed by furnishing to E. J. O'Brien and D. O'Brien and the hands engaged on their bridges large supplies of goods at the profits usually realized by said retail dealers, to all which he (Hoff) agreed; and was to receive State-bonds and orders on the board of public works at par, so soon as the said firm of O'Briens could procure them; and the

1879
Special Term.

McClaskey &
Crim *et al.*
v.
O'Brien *et al.*

*dealing* was then carried on for several months, and by investigation E. J. O'Brien found that his firm was indebted to him, Hoff, in the sum of $2,000.00, and he informed him, Hoff, that he was unable to procure the aforesaid bonds or orders to secure him, Hoff, the said $2,000.00, but he would give him, Hoff, a deed of trust on the aforesaid farm, to which he agreed ; that the dealings were further carried on under the original contract between him (Hoff) and said firm of O'Briens, until the said firm became largely indebted to him ; that said E. J. O'Brien then informed him that in consequence of heavy losses, &c., he was not able to comply with his original contract, and proposed selling to him (Hoff) the said farm, to which he (Hoff) agreed and was to pay $6,500.00, which E. J. O'Brien informed him (Hoff) would be sufficient to pay his debts, and also the liens or judgments against E. J. O'Brien in favor of Arthur Cowen, D. W. Moore, Anthony Reger and others, which he (Hoff) was to satisfy in payment of said farm; but upon settlement between said O'Briens and him (Hoff) it was ascertained that their indebtedness to him was larger than they expected, which would with the aforesaid judgments or liens exceed the $6,500.00; that he (Hoff) settled or paid the aforesaid judgments or liens, and Emmitt J. O'Brien executed to him (Hoff) his deed for said farm on the 13th day of July, 1859, in which is acknowledged the payment of the said $6,500.00, which was paid by cancellation of the aforesaid deed of trust and other indebtedness of E. J. O'Brien to him (Hoff) and the aforesaid judgments and liens, which he amicably settled previous to the time of the dealings between him and the said firm of the O'Briens ; that the plaintiffs McClaskey & Crim, were engaged in mercantile business in the town of Philippi, and were dealing with the firm of E. J. & D. O'Brien, under a like contract of the one mentioned between him (Hoff) and said firm of O'Briens; the said McClaskey & Crim becoming displeased with the said firm of the O'Briens on account of

1879
Special Term.

McClaskey &
Crim *et al.*
v.
O'Brien *et al.*

their favoring him (Hoff) with their custom, they proceeded against the said firm of the O'Briens, in the name of E. B. Long & Co., and obtained their judgment; that E. J. O'Brien then informed him (Hoff) of the proceedings of McClaskey & Crim, and also informed him that he had procured an order on the board of public works, which he ought to have, as he had furnished more on which he had received no profit than McClaskey & Crim; that he (Hoff) informed E. J. O'Brien that he would be pleased to credit his account with $500.00, and receive the $500.00 order at par, but as the said McClaskey & Crim seemed maliciously inclined to injure him, perhaps he had best pay them the $500.00 order on their aforesaid debt, which E. J. O'Brien agreed to do, and he (Hoff) believes that he did do, as McClaskey & Crim informed him (Hoff) that they had received the $500.00, &c.

There are other matters contained in said answer which I deem it unnecessary to mention for the purposes of this case, except that he professes to file a release deed with his answer from Anthony Reger, marked F.

Afterwards, on the first Monday of June, 1869, at rules, the plaintiffs, McClaskey & Crim, filed their amended bill in the cause, in which they allege that said Daniel O'Brien has "fraudulently conveyed two hundred and forty three acres of this seven hundred and sixty five acre tract of land, mentioned in the original bill, to Bridget McGinnis by deed admitted to record in the recorder's office of Barbour county; that he has also fraudulently conveyed two hundred acres of said seven hundred and sixty five acre tract to Jacob Zirkle by deed admitted to record in the same recorder's office on the 20th day of March, 1865, and one hundred acres to Daniel Zirkle by deed admitted to record in the recorder's office of Upshur county, on the 14th day of March, 1865; that said Daniel O'Brien was the owner of and has fraudulently conveyed, a tract of three hundred and fifty seven acres of land situated in Upshur county, de-

1879
Special Term.

McClaskey &
Crim *et al.*
v.
O'Brien *et al.*

scribing the same by metes and bounds, by deed admitted to record in the recorder's office on the 19th day of May, 1865, to Enoch Hall; that at the time of the rendition of plaintiffs' said judgment mentioned in the original bill, said E. J. O'Brien was the owner of land conveyed to him by deed by Abner Turner, situated in the county of Barbour, which the said O'Brien has fraudulently conveyed to one Isaac Zinn by deed admitted to record in the recorder's office of Barbour county, on the 18th day of February, 1868; and that the said O'Brien was at the date of said judgment the owner of another tract of fifteen acres, situated in what is known as flat woods, adjoining the land of Jacob Shank, giving the metes and bounds, which said fifteen acres was purchased by said O'Brien from Abraham Wells, for the conveyance of which said Wells executed to said O'Brien his title-bond, and said O'Brien has long since paid to the said Wells the purchase-money for the same and has long since been entitled to a conveyance for the same; that said O'Brien has fraudulently conveyed said fifteen acres of land to James McVicker by deed of record in Barbour county; and the said McVicker well knew at the time of purchasing the said fifteen acres from the said Wells, that the said Wells had before that time sold the same to the said Emmitt J. O'Brien, and that the said Wells was to convey the same to the said O'Brien, which said fifteen acres the said O'Brien has fraudulently conveyed to the said McVicker by deed admitted to record the 25th of February, 1864; that said McVicker has since sold said fifteen acres of land to one Jacob Shank by deed dated the 15th of February, 1864, and of record in the recorder's office of Barbour county; that at the date of said judgment the said E. J. O'Brien was the owner of a lot of land in what is known as Georgetown, Barbour county, conveyed to him by Levi Talbot by deed of record in the recorder's office of said county, and that the said E. J. O'Brien has fraudulently conveyed said lot of land to Elisha Finley, in trust to secure Charles

1879
Special Term.

McClaskey &
Crim et al.
v.
O'Brien et al.

E. Finley, by deed admitted to record in said office on the 19th day of February, 1868.

The bill also alleges that the deed of trust executed to A. G. Reger, trustee, on the 6th of October, 1856, to secure Anthony Reger the debt therein specified, and of record in the recorder's office of Barbour county, a copy of which is filed with the original bill, has been paid some time since to the said Anthony Reger, for which he has executed a deed of release which is of record in the said recorder's office; that John Davis Day in his lifetime executed to Nathaniel Reddick, trustee, a deed of trust on the land sold by said Day to Emmitt J. O'Brien and Daniel O'Brien, as stated in said original bill, together with other lands of the said John Davis Day, to secure to Nathaniel H. Reddick, Sr., the sum therein specified, which said deed of trust is of record in the recorder's office of Upshur county, which said deed of trust was on the 5th day of March, 1855, assigned to William H. Day by John R. Kelly, attorney in fact for Richard H. Reddick, Sr., which said assignment is made in said deed; that the power of attorney of Richard H. Reddick, Sr., to the said John R. Kelly, to assign and transfer said deed of trust to the said William H. Day, is now of record in the recorder's office of Upshur county; that William H. Day and Nathaniel Reddick did on the 13th day of November, 1865, execute a deed of release to Mary B. Day, Richard H. B. Day, Isaac White and Virginia White, his wife, late Virginia Day, heirs at law of said John Davis Day, for all the land conveyed by said deed of trust, which said deed of release is of record in the recorder's office of Upshur county; that John Davis Day some time in the year 186–, departed this life intestate, leaving the following children and heirs at law: Richard H. B. Day and Virginia Day, and that said Virginia Day has since intermarried with Isaac White; that the said Day, deceased, also left a widow, who is entitled to dower in the land mentioned as sold by Day to said O'Brien; that Henry O. Middleton, who was appointed ad-

1879
Special Term.

McCluskey &
Crim *et al.*
v.
O'Brien *et al.*

ministrator of said John Davis Day, deceased, has also died; that Jacob Rorabaugh has been appointed and qualified as the administrator of the said Day, deceased. Your orator is informed, and here charges, that the said Mary B. Day is ready and willing to release her dower in said land, sold to the said O'Briens by the said Day, as shown in said original bill, and that the said Richard H. B. Day, Isaac White and Virginia White are ready and willing to convey the same to the said O'Briens, when they shall have paid the said purchase-money; that Enoch Hall some time since departed this life, after making his last will and testament, which has been duly admitted to probate, by which said will Mary M. Hall was appointed executrix and David Hall executor of the said Enoch Hall, deceased, who have duly qualified as such, and that the said Enoch Hall left the following children and heirs-at-law at the time of his death, to wit: D. O'Brien Hall, Hannah Hall, Enoch Hall, Jacob Hall, Philip Hall, Nancy G. Hall and Lucinda Hall; that said Nancy, Hannah, Enoch, Jacob and Philip Hall, are all infants under twenty-one years, and that the said Charles E. Finley is an infant under twenty-one years of age; that John Reger, on the 23d day of April, 1860, recovered a judgment against the said Emmitt J. O'Brien and Daniel O'Brien, by confession in the clerk's office of Upshur county, for the sum ot $2,455.26 with interest thereon from the 18th day of April, 1860, till paid, and the costs, which amounted to the sum of $5.63, a copy of which said judgment is filed with the said cause of *Hart use Lownds* v. *Daniel O'Brien, &c.,* marked N, and herewith referred to and asked to be regarded as part of your orators' bill, which said judgment was docketed within the year, as the law directs, in the clerk's office ot the county court of Upshur county, on the 23d day of April, 1860, a copy of which judgment docketed is also filed in the said cause of *Hart use Lownds* v. *Daniel O'Brien, &c.,* marked C, and hereby referred to and prayed to be regarded as part of this bill,

1879
Special Term.

McClaskey &
Crim *et al.*
v.
O'Brien *et al.*

and that an abstract of the said judgment of the said John Reger against the said O'Briens was docketed in the clerk's office of the county court of Barbour county, on the 24th day of April, 1860, within the year, as the law directs, a copy of which said judgment-docket is filed in the said cause of *Hart* v. *D. O'Brien*, &c., L L, and prayed to be regarded as part hereof, which said judgment of the said John Reger against the said O'Briens, plaintiffs are advised, constitutes a lien on the above described land, except the land conveyed by the said Emmitt J. O'Brien to the said Henson L. Hoff, and is also a lien on the seven hundred and sixty-five acre tract of land mentioned in your orators' said original bill, as belonging to the said Daniel O'Brien, and also on the said six hundred and thirty-eight and one half acres of land sold by the said John Davis Day to the said O'Briens, also mentioned and described in said original bill; that your orators are informed that the said O'Briens have paid to the said John Reger some portion of his said judgment, but are not advised of the amount with sufficient certainty to state the same, but as this cause will have to be referred to a commissioner to settle the various liens and their several priorities on the lands of the said O'Briens, your orators will leave the said O'Briens to prove their payments on said judgment; that at the November term, 1867, of the circuit court of Barbour county, John Townsend recovered a judgment against the said Daniel O'Brien for the sum of $150.00, with interest thereon from the 21st November, 1857, till paid, and his costs, which amount to the sum of $16.38, a copy of which said judgment is filed with the said cause of the said *Hart, use against the said Daniel O'Brien*, marked Q, and hereby referred to as part hereof, which said judgment the said Townsend has assigned, transferred and set over to Samuel Woods, and was docketed in the recorder's office of Barbour county, on the 7th day of May, 1869; and that Philip S. Basnett also at the November

1879
Special Term.

McClaskey &
Crim et al.
v.
O'Brien et al.

term, 1868, of the said circuit court, recovered a judgment against the said Daniel O'Brien, for the sum of $100.00, with interest thereon from the 20th day of February, 18—, until paid, and the costs, which amount to the sum of $23.23, a copy of which is also filed with the said cause of *Hart &c., against said O'Brien*, marked R, and here referred to as part hereof, which said judgment was docketed in the recorder's office of Barbour county, on the 7th day of May, 1869, and that Samuel D. Brady and Wilson Swindler, merchants and partners trading under the firm name and style of Brady & Swindler, at the —— term 18—, of the county court of Barbour county, recovered a judgment on a forthcoming bond against Samuel George, Emmitt J. O'Brien and Daniel O'Brien for $105.18, to be discharged by the payment of the sum of $52.50, with interest thereon from the 20th day of August, 1858, until paid, and the costs, which amount to the sum of $——, a copy of which said judgment is also filed with the said cause of *Hart use, &c.,* v. *Daniel O'Brien, &c.,* and marked L, and here referred to as part hereof, which said judgment was docketed in the said recorder's office on the 7th day of May 1869 ;" that the said Samuel George has departed this life intestate, and that Auguston B. Modisett, sheriff of Barbour county, has been appointed his administrator; that the said judgments of the said John T. Townsend, Phillip S. Basnett and Brady & Swindler constitute liens upon the unsold portions of the said seven hundred and sixty-five acre tract and the six hundred and thirty-eight and one half acre tract, purchased by the said O'Briens from the said John Davis Day, after the payment of the purchase-money yet unpaid; that the above described land together with the land mentioned and described in the original bill will not rent for sufficient, &c.; that the said William H. Day some time since died after making his last will and testament, by which said will Amanda M. F. Day was appointed executrix of said Willam H. Day and has

1879
Special Term.

McCaskey &
Crim *et al.*
v.
O'Brien *et al.*

duly qualified as such; that Daniel Zirkle has died intestate leaving heirs at law to wit: Jacob Zirkle, Louis Zirkle, Oliver Zirkle, Ellen Will, late Ellen Zirkle, now the wife of Franklin Will, Mary Yeager, late Mary Zirkle, wife of Isaac Yeager.

The said amended bill then makes the following persons parties defendant thereto, to wit: Emmitt J. O'Brien, Daniel O'Brien, Henson L. Hoff, Anthony Reger, A. G. Reger, trustee, Lewis Wilson, trustee, Jacob H. Rohrbaugh, administrator of John Davis Day deceased, Isaac Zinn, Elisha Finley, Charles E. Finley, Bridget McGinnis, James McVicker, Abraham Wells, Jacob Shank, John Reger, Jacob Zirkle, Mary M. Hall, executrix of Enoch Hall, deceased, D. O'Brien Hall, Nancy Hall, Hannah Hall, Enoch Hall, Jacob Hall, Philip Hall, Lucinda Hall, David Hall, executor of Enoch Hall, deceased, John Townsend, Samuel Woods, Samuel D. Brady and Wilson Swindler, partners in the late firm of Brady & Swindler, Phillip S. Bassnett, A. B. Modisett, administrator of Samuel George, deceased, Mary B. Day, Nathaniel Reddick, trusteee and Richard H. Reddick, Sr., Amanda M. Z. Day, executrix of William H. Day, deceased, Franklin Will, Ellen Will, Isaac Yeager, Mary Yeager, Richard H. D. Day, Isaac White, Virginia White, late Virginia Day, Lewis Zirkle, Oliver Zirkle, Joseph L. Long, Elias B. Long and John W. Slagle. This amended bill concludes with the prayer, that the lands in this and the original bill be decreed to be sold for the payment of the judgment-liens therein specified, &c.

At July rules 1869, the death of Hannah Hall was suggested, and the cause abated as to her on motion of plaintiffs. At the same time defendant, Anthony Reger, appeared and demurred to the amended bill, and at August rules, 1869, defendant, D. B. Hall, appeared and demurred to amended bill, afterwards, on the 11th day of August, 1869, the court heard the cause upon demurrer to said bill and overruled the same and remanded

1879
Special Term.

McClaskey &
Crim et al.
v.
O'Brien et al.

the cause to rules for defendants to answer. And at November rules, 1869, the cause was set for hearing.

It further appears that at June rules, 1869, the plaintiff, Ira Hart, who sues for the use of Lloyd Lownds, filed an amended bill to his original bill. This amended bill contains substantially the allegations of the amended bill of McClaskey & Crim, except that it alleges, that at the time plaintiff Hart's said judgment was rendered, said Emmitt J. O'Brien was the owner of a valuable tract of land in the county of Barbour on the east side of Buckhannon river adjoining lands of Isaac House and others containing about six hundred acres, and being the same land granted by the Commonwealth of Virginia to Daniel O'Brien and conveyed to said Emmitt J. O'Brien by Eli Butcher by deed of record in the recorder's office of Barbour county; and that the said Emmitt J. O'Brien on the 13th day of July, 1859, did fradulently sell and convey said land to Hanson L. Hoff by deed of that date of record in the same recorder's office, and that plaintiff is informed that said Hoff has not yet paid the purchase-money for said land to the said O'Brien; and that said Hoff before and at the time of his said purchase had full and complete notice of the existence of plaintiff's judgment against the said O'Brien; and that by the terms of said sale the said Hoff was to pay all judgments against the said O'Brien, which he has not done; and that the judgment mentioned in plaintiff's original bill, of John Weaver for the use of William P. Woodruff against said O'Briens as partners, &c., is charged to have been long since paid; and with the further exceptions that no mention is made of the said deed of trust for two hundred acres of land executed to secure Anthony Reger's said $600.00 debt nor of the said deed of trust executed to secure Hoff's said $2,000.00.

This amended bill of Ira Hart makes the following defendants thereto, viz: Daniel O'Brien, Emmitt J. O'Brien, John Wentz, Joseph Teter, administrator of William P. Woodruff, deceased, Jacob A. Rohrbaugh,

1879
Special Term.

McClaskey &
Crim *et al.*
v.
O'Brien *et al.*

administrator of John Davis Day, deceased, Isaac Zinn, Elisha Finley, Charles E. Finley, Bridget McGinnis, James McVicker, Abraham Wells, Jacob Shank, Hanson L. Hoff, John Reger, Jacob Zirkle, John Townsend, Samuel Woods, Samuel D. Brady and Wilson Swindler, partners under the late firm name of Brady & Swindler, Phillip S. Basnett, Auguston B. Modiset, administrator of Samuel George, deceased, Mary B. Day, Nathaniel Reddick, trustee, Richard H. Reddick, Sr., Amanda F. M. Day, executrix of William H. Day, deceased, Mary Yeager, Lewis Zirkle, Oliver Zirkle, Richard H. D. Day, Isaac White, Virginia White, late Virginia Day, Franklin Will, Ellen Will and Isaac Yeager. The prayer of this bill is the same as that of said amended bill of McClaskey & Crim.

Afterwards at July rules, 1869, defendant, Jacob Shank, appeared and demurred to said Ira Hart's amended bill, and on the 11th day of August, 1869, the court overruled the demurrer and the cause was remanded to rules for the defendants to answer. Afterwards, on the 10th day of November, 1869, the defendants, Mary B. Day, Jacob Shank and Bridget McGinnis, filed their separate answers to the bill and amended bill of said Ira Hart. Mary B. Day in her answer admits, that she is the widow of John Davis Day, deceased, and that she was entitled to dower in the six hundred and thirty-eight and one half acres of land in the bill mentioned, but says she has conveyed to Richard H. B. Day and Virginia White, heirs at law of John Davis Day, deceased, all of her dower interest in said land by deed of record in the recorder's office of Upshur county, a copy of which she files, as an exhibit; and she further says in her answer, as follows: "and respondent doth hereby release to the said Richard H. D. Day and Virginia White all her dower interest in said six hundred and thirty-eight and one half acre tract of land."

It further appears, that on the 10th day of November, 1869, the defendants, Mary B. Day, Jacob Shank and

1879
Special Term.

McClaskey &
Crim et al.
v.
O'Brien et al.

Bridget McGinnis, by leave of the court filed their separate answers to the bill and amended bill of McClaskey & Crim. This answer of Mary B. Day is the same as that filed in the Hart case.

On the 11th day of November, 1869, defendant, Henson L. Hoff, filed his answer, by leave of the court, to the amended bill of said Hart. In this answer said Hoff admits the purchase of the large farm of E. J. O'Brien as stated in plaintiffs' bill; but as to his alleged indebtedness to E. J. O'Brien he avers the charge is utterly false, as he (independent of the large indebtedness of E. J. O'Brien to him) had to pay large amounts to Anthony Reger, Arthur Corne, D. W. Moore and others, who had liens against the aforesaid farm; and he says, that upon settlement he, Hoff, ascertained that he has paid to E. J. O'Brien and his creditors a considerable amount over what he was to pay for said farm.

On the 13th day of April, 1870, defendant, Jacob Rohrbaugh, administrator, &c., filed his separate answer to the bills and amended bills of said Hart and McClaskey & Crim. And on the same day the defendant, Jacob Zirkle, with leave of the court, filed his separate answer to the said bills and amended bills, and also Isaac Zinn. On the 19th day of April, 1870, defendant, Mary M. Hall with leave of the court filed her separate answer to the said bills and amended bills. It appears by the record that on the said 19th day of April, 1870, the causes came on to be again heard upon the bills and amended bills, in the first cause herein named, upon order of publication duly executed, answer of Jacob Zirkle, Jacob Shank, Bridget McGinnis, Hanson L. Hoff, Isaac Zinn, Mary B. Day, Mary M. Hall, Jacob H. Rohrbaugh, administrator of John D. Day, deceased, and Emmitt J. O'Brien, special replication to all said answers, answer of guardian *ad litem* appointed to defend the interests of the infant defendants, replication thereto and decree *nisi* as to all those who have not answered, and former orders and decrees, and the bills in the last

1879
Special Term.

McClaskey &
Crim *et al.*
v.
O'Brien *et al.*

cause herein mentioned, order of publication duly executed, answer of Jacob Shank, Bridget McGinnis, Hanson L. Hoff, Jacob Zirkle, Isaac Zinn, Mary M. Hall, Mary B. Day, Jacob H. Rohrbaugh, administrator of John Davis Day, deceased, answer of Emmitt J. O'Brien, answer of guardian *ad litem*, special replication thereto, decree *nisi* as to all the other defendants who have not answered, former orders and decrees, and report of Simon Buckingham, master commissioner, filed April 9, 1870, to which there are exceptions, and was argued by counsel; on consideration whereof the court doth overrule the first exception, but sustains the second of said exceptions on the ground that said report had not been retained by the commissioner in his office ten days after completion, and the other exceptions being waived, it is adjudged, ordered and decreed, that said report be recommitted with leave to take further proof as to other outstanding debts, and to ascertain any other lands which have not been reported and the several liens thereon, and the production of all title-papers and deeds, contracts, or other agreements now in their possession relative to any land they now own, or before this have sold or conveyed, and their several priorities, and that the said commissioner hath leave and is hereby directed to examine Emmitt J. O'Brien and Daniel O'Brien on oath, as to any other lands they, or either of them, are the owners of, and the description thereof, and that the said commissioner may examine any of the other defendants or plaintiffs upon oath that any party may require; but by doing so shall not authorize any of the parties to testify as to a fact or facts which they would not have a right to do, had this order not been made, and any of the parties to the above named causes may have any such surveying done at his own costs as he may require, and that publication of the time and place of executing this order in some public newspaper published in the county of Harrison, for four successive weeks, shall be equivalent to personal notice, and that he report his proceedings to this court.

1879
Special Term.

McClaskey &
Crim *et al.*
v.
O'Brien *et al.*

It further appears that on the 20th day of April, 1870, on motion of Albert G. Reger, 'leave was given him to file his petition in the said two causes, which were accordingly filed, and on his motion he was made a party defendant to said two causes, and it was ordered that his said petition should be taken for and stand as the answer of the said Albert G. Reger in said causes, which petition was withheld by said A. G. Reger.

Emmitt J. O'Brien in his answer to the bill and amended bill of McClaskey & Crim admits that he conveyed the land to Hoff, but positively denies that it was done to defraud McClaskey & Crim or any other person, but says that the same was *bona fide* and for valuable consideration. He also admits that he gave a deed of trust executed to said Reger, which was paid off by Hanson L. Hoff, and that said deed of trust to Lewis Wilson to secure Hoff was all arranged and paid off in the sale of the land to Hoff. He says that the debt of Woodruff against him was paid off by him. He admits the purchase of six hundred and thirty eight acres of land of Day, deceased, and says that Day was paid a part of the purchase-money, and then it was agreed with said Day that he should have a part of the land back, in consideration of a part of the purchase-money due said Day; that Day sold a part of said land which was amply sufficient to pay him up, and the balance of said land belongs to respondent, the exact quantity he does not know, &c.

Emmitt J. O'Brien in his answer to the bill and amended bill of Hart says as follows in relation to the John Davis Day matter :

"Respondent, in answer to the John Davis Day debt, admits that on the first day of October, 1857, the firm of E. J. & D. O'Brien purchased of John Davis Day six hundred and thirty-eight acres one rood and nineteen poles of land at $4.00 per acre, amounting $2,553.00, for which the said E. J. & D. O'Brien made the following payments :

"First, $646.72, an amount decided to be fairly com-

1879
Special Term.

McClaskey &
Crim et al.
v.
O'Brien et al.

ing to respondent by the board of public works of Virginia, at a meeting held by said board, on the 17th day January, 1856, and for the payment of which a bill passed the two houses of the Legislature at its regular session, about the 18th day of January, 1860. At the next session of the Legislature of Virginia another bill passed to pay the interest on the $646.72 from the 17th day of January, 1856, which amounted to $155.20, which two sums together amounted to $801.92. Respondent E. J. O'Brien assigned a claim for money due him for building the stone work for the bridge across Elk river, at Bond's mills in Harrison county, which was agreed to be paid for by Lewis county, out of a subscription which said county had made to the Buckhannon and Clarksburg turnpike road, which sum amounted at the time to about $375.00

"Respondent and his partner Daniel O'Brien bought an execution of John Davis Day, deceased, issued against the goods and chattels of William Apperson, August 1854, which the said E. J. & D. O'Brien was to try to get of said Apperson in work on the bridge they were then building, and if not paid it was to be returned to the said Day, deceased, and he (Day) was to credit it on the land. The firm could not get the said Apperson to do the work, and he (Apperson) has always been insolvent, so respondent now returns the execution and asks that the amount may be a credit on the land. At the time of the purchase of the land referred to the said execution amounted to $37.00—it is marked C, $37.00 ; John Davis Day, deceased, received of respondent's firm another order of $400.00 on the board of public works of Virginia, $200.00 of which was to be a credit on the six hundred and thirty-eight acres of land before mentioned, $200.00, which different sums amounted to $1,213.92.

"Before the war broke out in 1861, the firm of E. J. O'Brien was prosecuting a claim against the board of public works of Virginia, for losses which they sustained

1879
Special Term.

McClaskey &
Crim et al.
v.
O'Brien et al.

by a freshet in the Middlefork, amounting to about $1,800.00. As soon as the war commenced respondent gave up the claim, or looked at it as being lost in the war; John Davis Day, deceased, had given his brother a deed of trust for a large amount of money ; his brother was living in East Virginia, and at the time of the commencement of the war was a member of the Senate of Virginia. John Davis Day, deceased, had sold one hundred acres of the six hundred and thirty-eight acres sold E. J. & D. O'Brien to one Bradston, and received some $40.00 of the purchase-money. It was impossible for John Davis Day, deceased, at the time to settle the deed of trust or to cancel the contract with Bradston, even if Bradston had been so disposed. Respondent then made a contract with John Davis Day that he was to take back a part or the whole of the land, but requested that the matter should stand for the present, and if he could sell the whole of it to a better advantage than a part he would pay back to E. J. & D. O'Brien in money what he, Day, had received of them. If he could not sell it altogether it was agreed that E. J. & D. O'Brien should have an amount of land equal to what they had paid for at the price of $4.00 per acre. John Davis Day, by permission, had sold one hundred and nine (109) out of the six hundred and twenty-eight and fraction acres to two men. To one of the men, a man by the name of Casto, he sold fifty-nine acres; the other, to a man by the name of Oldaker. Both pieces made the one hundred and nine acres before referred to, for which he, said Day, deceased, received $545.00, and thus left of the six hundred and thirty-eight and one half acres nineteen poles, five hundred and twenty-nine acres. The one hundred acres which he had sold Bradston and had no legal right to convey, left only four hundred and twenty-nine acres. After the war commenced respondent saw an opportunity to sell all the land. Went to John Davis Day, deceased, and he refused to allow the land to be sold and take greenbacks,

1879
Special Term.

McClaskey &
Crim *et al.*
v.
O'Brien *et al.*

as he thought they would go down or become worthless. John Davis Day, in the early part of the war, was taken by the United States troops and sent to Camp Chase and from there to Camp Delaware, where he died. He did not during his life satisfy the deed of trust; and his administrator, Middleton, has executed a deed for the fifty-nine acres sold to Casto, and Oldaker has a title-bond for his fifty, and Bradston has a title-bond for his one hundred acres, all the acts of John Davis Day and his representatives, &c.

On the 10th day of August, 1870, defendant Daniel O'Brien, by leave of the court filed his answer to the original and amended bills of McClaskey & Crim, and says and avers therein in relation to the said John Davis Day matter as follows:

"Respondent further ·says that it is true, that about the year 1857 he and his brother E. J. O'Brien, did purchase of John Davis Day a tract of land situated in Upshur county containing six hundred and thirty-eight and one half acres, for which they agreed to pay $4.00 per acre; that upon this contract they paid to said Day the sum of about $650.00 on the — day of ——, 18—, by a claim upon the board of public works of Virginia. On the — day of ——, 18—, the Legislature of Virginia passed an act appropriating money for the payment of the same. They also assigned to said Day another claim upon the board of public works of Virginia for $155.00, and the Legislature, on the — day of ———, 18—, passed an act for the payment thereof. They also assigned to said Day a bond upon Lewis county for the amount of $400.00 in payment for the land aforesaid.

"Respondent further says that in the winter of 1861, they agreed in writing with said Day that he should sell some of said land and receive the proceeds and apply it upon what respondent and his said brother owed him on said land. Said writing was delivered to said Day, and therefore cannot be produced by respondent. That in conformity with this agreement said Day did sell to

John Oldaker fifty acres at the sum of $5.00 per acre. This sale was made on the 12th day of July, 1862, and on the — day of ——, 1862, by virtue of said last mentioned contract, said Day sold to one Stephen M. Casto another parcel of said land containing fifty-nine acres at $5.00 per acre.

1879
Special Term.

McClaskey &
Crim et al.
v
O'Brien et al.

"Further answering respondent says, that before either of said contracts were entered into between the parties, said Day had sold one hundred acres of said land to one Thomas Bradston, for which he had executed his title-bond and received a portion of the purchase-money; respondent does not know how much, but not less than $40.00.

"Respondent further says that in March, 1863, they entered into another contract with said Day in writing, which cannot be here exhibited because the same has been lost or destroyed, which expressly stipulated that respondent and his said brother should receive the value of the money they had paid him in lands at the forks of Handy Camp run at $4.50 per acre, and that said Day should take back the residue thereof, which said contract gave.to respondent, as was intended, about three hundred and fifty acres of land, all of which respondent expects to be able to prove."

On the day and year last aforesaid, said Daniel O'Brien filed his answer to the bill and amended bill of Ira Hart for use of Lloyd Lownds, in which he states and alleges in relation to the said John Davis Day matter substantially the same as in his answer in the other cause, &c.

On the 8th day of November, 1870, the death of defendant John Reger was suggested in each of said causes; and on motion of the plaintiffs therein and by consent of Joshua Wood, executor of said John Reger, each of said causes was revived against said Wood as such executor; and on the same day the said Joshua Wood as such executor filed his separate answer in each of said causes.

The deed of trust from Emmitt J. O'Brien to Lewis

1879
Special Term.

McClas'tey &
Crim *et al.*
v.
O'Brien *et al.*

Wilson, trustee, to secure said Hoff, appears in the record and is dated the 8th day of May, 1857. It recites, that the said Emmitt J. O'Brien is indebted to the said Hanson L. Hoff in the sum of $2,000.00 by promissory note executed by E. J. and D. O'Brien on the 11th day of April, 1857, which bears interest from the date thereof. It appears to have been admitted to record on the 8th day of May, 1857. The deed from Emmitt J. O'Brien and his wife to said Hoff is also in the record and is dated the 13th day of July, 1859. The consideration is $6,500.00, the receipt whereof is acknowledged; and it conveys to said Hoff all that certain tract or parcel of land situated in Barbour county, Virginia, on the east side of the Buckhannon river containing about six hundred acres, being the same land which was granted by the commonwealth of Virginia to Daniel O'Brien by grant dated the 26th day of September, 1811, being the same land which was conveyed to said E. J. O'Brien by Eli Butcher and Margaret his wife, &c., by deed bearing date the 25th of September, 1852, and is a deed of general warranty. This deed was duly acknowledged on the 14th day of July, 1859, and admitted to record in the clerk's office of the county court of Barbour county on the 15th day of July, 1859, and again on the 8th of February, 1862. The deed of trust from Emmitt J. O'Brien to A. G. Reger, trustee, to secure Anthony Reger is dated the 6th day of October, 1856; and it conveys to said A. G. Reger two hundred acres of land off of the lower end of the farm, on which said O'Brien then resided, in the county of Barbour on the Buckhanon river adjoining lands of Isaac House, to extend up the river upon said land and across the same, for said quantity, in trust to secure the payment of $600.00 due by single bill of same date of the trust-deed. This deed of trust was acknowledged the 6th day of October, 1856, and was duly admitted to record in the clerk's office of the county court of Barbour county on the 28th day of September, 1857. The defendants, including said Han-

son L. Hoff, took his deposition; and he says therein among other things as follows, viz:

1879
Special Term.

McClaskey &
Crim *et al.*
v.
O'Brien *et al.*

"By same.—State of whom you purchased the land upon which you now reside and how you paid for the same, and particularly if you paid off any judgments in paying for said land which were liens thereupon; if so, please describe them; tell all you know upon this subject?

"Answer—I purchased from Emmitt J. O'Brien, and the purchase was based upon the contract I spoke of above, and was made to discharge a deed of trust I held against the land, some notes and bonds, and an account I held against them; what brought the purchase about was that he had notified me to sell the land under the deed of trust, and I thought I had better buy it myself and not sell it; and I did so, and he made the conveyance immediately upon the purchase, acknowledging the payment of $6,500.00; subsequently upon a settlement we found that his indebtedness overran several hundred dollars the purchase-money; the deed of trust due me, the book account, notes and bonds due me, and the judgments against them overran the $6,500.00 and I never paid O'Brien personally; afterwards 1 paid the judgments of the following named firms and persons: One in favor of D. W. Moore & Co., Baltimore; one against E. J. O'Brien and Nathan H. Taft, I think in favor of Dayton, but do not recollect; one in favor of Abner Turner, use, &c.; one in favor of Arthur Corne; one in favor of Julia A. Butcher, and a deed of trust to Anthony Reger; I do not know whether they were liens on the land at the time, but it is my opinion they were; the deed of trust was."

No deposition or testimony taken and filed in the cause in any manner conflicts with this deposition of said Hoff upon the subject of which it speaks.

The release deed from Anthony Reger in the pleadings mentioned is as follows, to wit:

"WEST VIRGINIA, BARBOUR COUNTY.

"I, Anthony Reger, hereby release a deed of trust

1879
Special Term.

McClaskey
Crim et al.
v.
O'Brien et al.

made by Emmitt J. O'Brien to me, dated the 6th day of October, 1856, and recorded in the recorder's office of said county, West Virginia, in deed book number six, page seventy-seven.

"Witness my hand and seal this 22d day of August, 1868.

"ANTHONY REGER, [Seal.]"

It appears to have been acknowledged on the day of its date, and admitted to record in said recorder's office on the 27th day of August, 1868, about seven years after the institution of these suits, that is to say, it was executed, acknowledged and recorded about seven years after these suits were commenced and the original bills filed and more than a year after the decree of the 6th day of March, 1867, which ascertained said deed of trust and the deed of trust of Hoff to be liens as stated in said decree.

The deed of grant and release from Mary M. Day to Richard H. B. Day and Virginia White, of her dower interest in the six hundred and thirty-eight and one half acres of land in her answer mentioned appears in the record and is dated 20th of August, 1869, and was duly admitted to record in the recorder's office of Upshur county, on the 4th day of December, 1869. It is a deed of special warranty. The deed of trust from John D. Day and wife to Nathaniel Reddick, to secure Richard H. Reddick, Sr., in the sum of $1,935.00 due by bond of the date of the deed conveyed to said Nathaniel Reddick as trustee as aforesaid, a tract of land in Upshur county, (formerly in Barbour county,) Virginia, containing by survey two thousand four hundred and fifty three acres, and described and bounded in a deed from Henry O. Middleton to said John D. Day. This deed of trust appears to have been acknowledged the 22d day of September, 1852, and admitted to record in the clerk's office of the county court of Upshur on the 25th day of May, 1853. It also appears that on the 5th day of May, 1856, John R. Kilby, attorney in fact for said R. H.

1879
Special Term.

McClaskey &
Crim et al.
v.
O'Brien et al.

Reddick, assigned to William H. Day, without recourse, the said deed of trust. A power of attorney from said Richard H. Reddick to said Kilby authorizing him to transfer said deed of trust to said William H. Day, bearing date the 13th day of February, 1855, is also a part of the record and is under seal and seems to have been acknowledged by said Richard H. Reddick on the day of its date, and admitted to record in the clerk's office of the county court of Upshur county, on the 31st day of March, 1855. The deed releasing said last named deed of trust after the death of said John Davis Day, is also a part of the record, and bears date the 13th day of November, 1865, and seems to have been executed by said William H. Day and Nathaniel Reddick, the trustee, and was admitted to record in the recorder's office of Upshur county, on the 14th day of March, 1868. This deed states the death of John Davis Day, and among other things recites, that "whereas, the said bond has been fully paid to the said William H. Day and the said heirs, to wit: Mary B. Day, Richard H. B. Day, Isaac White and Virginia his wife, desire the said property to be released to them: now therefore this deed witnesseth, that the said Nathaniel Reddick in consideration of the premises and by and with the consent of William H. Day, testified by his being a party to this deed and signing and sealing the same, doth grant unto the said Mary B. Day and Isaac White and Virginia his wife, all the tract of land in said deed mentioned, &c. The said William H. Day releases to the said persons as heirs all his claims upon said land." The deed also recites in a paragraph immediately preceding that just quoted as follows: "The said John D. Day has departed this life, leaving his wife, Mary B. Day, his son Richard H. B. Day, and his daughter Virginia Day, who is now the wife of Isaac White, and said Isaac White, his heirs at law." Various other deeds and writings mentioned in the pleadings, are also a part of the record, and they seem to be generally as stated in the pleadings. Sever-

1879
Special Term.

McClaskey &
Crim et al.
v.
O'Brien et al.

al depositions also appear in the record, some taken by plaintiffs, and some by defendants, but I deem it unnecessary to state their contents, as it would take too much space to do so, and I deem it sufficient to refer to such of them, and such parts thereof, as I may deem necessary hereinafter.

It further appears that on the 17th day of April, 1871, the said circuit court made and entered a decree in these causes as follows, viz:

" These causes came on this day again to be heard upon the bill and amended bills, answer of defendant Daniel O'Brien, special replication thereto, answer of Joshua Woods, executor of John Reger, deceased, replication thereto in the first above cause, and the bill and amended bill, answer of defendant Daniel O'Brien, special replication thereto, answer of Joshua Woods, executor of John Reger, deceased, replication thereto, former orders and decrees, with the papers heretofore read in these causes, and report of master commissioner Simon Buckingham, to which there are exceptions, and was argued by counsel. On consideration whereof, the court doth overrule the first, fourth, sixth, seventh and eighth of said exceptions; and the other exceptions being withdrawn, it is adjudged, ordered and decreed that the judgments for the several amounts hereinafter named are liens on the lands of the defendants O'Briens, owned at the time they were recorded or afterwards, and are to be paid in the following order of priority : First, the debt of $1,219.87, with interest from March 18, 1871, due to J. Day's administrator, which is a lien only on the four hundred and twenty nine and one half acres, residue of the land sold by J. D. Day to defendant O'Brien; next, the two judgments of William W. Craver, use of Waldo P. Goff, amounting to $91.32, with interest from March 18, 1871 ; next, the judgment of Ira Hart, use of Lloyd Lownds, against Daniel O'Brien, Emmitt J. O'Brien and John Wentz for the sum of $335.38, with interest on $331.25 from the 1st day of April, 1870; next, the judgment of

1879
Special Term.

McClaskey &
Crim *et al.*
v.
O'Brien *et al.*

McClaskey & Crim against Emmitt J. O'Brien and Daniel O'Brien for the sum of $547.79, with interest from the 14th of October, 1857, subject to a credit of $400.00 paid October, 1858, and $8.99 costs at law ; next, the judgment of Camden and Hoffman against Emmitt J. O'Brien for the sum of $163.86, with interest from the 1st of April, 1870; next, the judgment of Brady & Swindler for $86.08, with interest from April 1, 1870; next, the balance of the judgment to Joshua Woods, executor of John Reger, against Emmitt J. O'Brien and Daniel O'Brien, for the sum of $580.50, with interest on $575.45 from the 1st day of April, 1870; next, the judgment of John Townsend against Daniel O'Brien for the sum of $277.45, with interest on $261.07 from the 1st April, 1870; next, the judgment of Philip S. Basnett 'against Daniel O'Brien for the sum of $195.77, with interest on $172.54 from the 1st April, 1870; next, the judgment of McClaskey & Crim against Emmitt J. O'Brien and Daniel O'Brien for the sum of $163.09, with interest on $134.43 from the 1st April, 1870. And it is further adjudged, ordered, and decreed that unless the said Emmitt J. O'Brien and Daniel O'Brien, or some one for them, shall, within thirty days from the rendition of this decree, pay to Ira Hart, use of Lloyd Lownds, to McClaskey & Crim, to Camden and Hoffman, to Joshua Woods, executor of John Reger, deceased, to Wilson Swindler, surviving partner of the firm of Brady & Swindler, to W. W. Craver, for the use of Waldo P. Goff, to John Townsend, use of Samuel Woods, to Philip S. Basnett, the amounts respectively herein decreed to them, and to the complainants in the first and the complainants in the second of said causes, their costs herein expended, that John Bassel, who is hereby appointed a special commissioner for that purpose, do, after having advertised the time, place, and terms of sale for at least thirty days by printed notice posted at the front door of the court-house of Barbour county, and also Upshur county, and at such other places as said commissioner may think necessary, before

1879

Special Term.
McClaskey &
Crim et al.
v.
O'Brien et al.

the court-house door of Barbour county, on some day fixed by law for judicial sales, first sell the two hundred and twenty two acres unsold of the seven hundred and sixty five acre tract, also the four hundred and twenty nine and one half acres, the unsold residue of the six hundred and thirty eight and one half acre tract sold by John Davis Day to Emmitt J. O'Brien and Daniel O'Brien, and the undivided interest of Daniel O'Brien in the one thousand nine hundred and fifty acre tract; and should the proceeds of said sale of the above land not be sufficient to pay the above named decrees, costs of suits, and expenses of sale, that the said Basnett, secondly, sell the seven and three fourths acres, conveyed to Isaac Zirkle; and should this not be sufficient for said purpose that said commissioner, thirdly, sell the house and lot in Georgetown, known as the family-house and lot, conveyed by Emmitt J. O'Brien to Elisha Finley, trustee for Charles E. Finley; and should this not be sufficient for said purpose of paying said decrees, that said commissioner, fourthly, sell the one hundred acres conveyed to Daniel Zirkle, and the two hundred acres conveyed to Jacob Zirkle; fifthly, sell the whole, or such part of the six hundred and sixty acre tract conveyed to defendant Hanson L. Hoff by the defendant, Emmitt J. O'Brien, as will be sufficient to pay the whole or the residue of the decree in favor of the complainants in the first of said causes, and also the whole or the residue of complainants' decree in the last above named cause; and that, should the proceeds of the sale of said lands, without that of the said five hundred and sixty acre tract decreed as aforesaid, be still insufficient to pay the said decree of Joshua Woods, executor of John Reger, deceased, said commissioner next sell the two hundred and forty three and one fourth acres of land, sold by Daniel O'Brien to Bridget McGinnis; next the house and lot in Georgetown, conveyed to Emmitt J. O'Brien by Crane & Shank; that said lands be sold by said commissioner for one eighth cash in hand, and the residue upon

1879
Special Term.

McClaskey &
Crim et al.
v.
O'Brien et al.

a credit of one and two years, taking from the purchaser bonds with approved security, with interest from day of sale, retaining a lien on said land for the unpaid purchase-money; that said commissioner sell said lands in lots as reported by commissioner Buckingham, or in smaller quantities, as he may think best, and that he report his proceedings to this court in order to a final decree. And in disbursing the proceeds of sale, the court will, if necessary, marshal them according to the interest of the creditors, &c.

I have not stated the contents of the commissioner's reports, they being three in number and of some length; and I will refer to them or such parts thereof hereafter to the extent I deem material in this court.

From the said decree of the said circuit court, rendered in said causes at the April term, 1870, the defendants, E. J. O'Brien and Daniel O'Brien, appealed to the Supreme Court of Appeals in June, 1871, under the provisions of the Code of this State, it seems, by mistake, intending perhaps at the time to appeal from said decree of April 17, 1871. Subsequently, the mistake being discovered, and on the 13th day of March, 1876, defendants, the said O'Briens and Hanson L. Hoff, petitioned for and obtained an appeal to this court from and to the said decree of said circuit court, rendered in said causes on the said 17th day of April, 1871, and have assigned in their said petition several errors in said last named decree. In this manner this complicated case has been brought before us for determination.

For convenience I will first consider the appellants' fourth, fifth, sixth, seventh, and a part of the matters involved in the eleventh assignments of error which are as follows, viz: "Fourth—The court erred in settling the priorities of the parties, as provided for in said decree. Fifth—The court erred in pronouncing the decree it did in not fixing the priorities of the parties in an intelligible manner, and reserving to itself the right after making the sale of applying the funds by marshalling the

1879
Special Term.

McClaskey &
Crim et al.
v.
O'Brien et al.

assets. The rights of the several parties should have been fixed, so that each party, if he bid for any of the land, would know exactly how the proceeds would be applied, and what were his rights in the funds. Sixth— The court erred in directing the land, which your petitioner Hoff purchased of your petitioner Emmitt J. O'Brien, to be sold, and making the application that it did of the funds of the sale. If the said land was directed to be sold at all, your petitioner Hoff should have been reimbursed out of the proceeds of the sale the amount of the Anthony Reger debt, which your petitioner Hoff paid, which was secured by the deed of trust of the 5th of October, 1856, and the $2,000.00 debt secured by deed of trust to Lewis Wilson of the 8th of May, 1857, both executed by the said Emmitt J. O'Brien on the land purchased by your petitioner Hoff of him, as shown by the deed of the 13th day of July, 1859. Said reimbursement should have been in the order in which your petitioner Hoff was entitled to by the time of recording of said deeds of trust. If said land was liable to be sold, there was no payment of the debt in either deed of trust, and they should have been regarded as valid liens. Seventh—If the court was authorized to sell the land purchased by your petitioner Hoff of the said Emmitt J. O'Brien, and applying the proceeds as it did, the court erred in not directing that any residue that might be left of the proceeds, if any, after discharging the liens which the court ascertained the land was bound for, should be paid over to your petitioner Hoff. This was necessary to enable your petitioner, Hoff, to know how to bid upon the land. Eleventh—The court erred in overruling the exceptions that it did to commissioner Buckingham's report."

The commissioner in his report of the 28th day of January, 1867, which the court by its decree of the 6th day of March, 1867, confirmed, ascertained as liens on the lands in the bills mentioned, first, the deed of trust executed to A. G. Reger to secure Anthony Reger dated the

1879
Special Term.

McClaskey &
Crim et al.
v.
O'Brien et al.

6th of October, 1856, for the sum of $600.00, with interest from the 6th of October, 1856, $369.90, total amount of the same $969.90, and the same is the oldest lien on the two hundred acres of land in the bill mentioned. Second, the judgment in favor of complainant Ira Hart for the sum of $184.51, with interest from the 29th day of December, 1856, is a lien on the lands of Daniel O'Brien from the fall term of the circuit court of Barbour county, 1856, and on the lands of Daniel and Emmitt J. O'Brien from the spring term, 1857. Third, the judgment in favor of plaintiffs McClaskey & Crim for the sum of $547.59, with interest from the 14th day of October, 1857, subject to a credit of $400.00, October 25, 1858, and $9.00 costs. Fourth, a judgment in favor of John Weaver, use of W. P. Woodruff for the sum of $70.82, with interest from the 10th of September, 1857, and $8.39 costs. Fifth, a deed of trust made to Lewis Wilson, trustee, dated the 8th of May, 1857, to secure Hanson L. Hoff in the sum of $2,000.00, due by promissory note, with interest from the 11th day of April, 1857. The commissioner also reports that this debt is a lien on the five hundred and sixty acres of land described in the said deed of trust, a copy of which is filed with the bill exhibit " D," which tract of five hundred and sixty acres was on the 13th day of July, 1859, purchased from the defendant, E. J. O'Brien, by said Hoff, to whom the aforesaid debt of $2,000.00 was due, and conveyed at said date by E. J. O'Brien and wife to said Hoff by deed of general warranty. Sixth—the commissioner ascertained the balance of purchase-money yet due John Davis Day, deceased, on the tract of six hundred and thirty eight and one half acres including interest to March, 1867, to be $3,214.45, and that the same is a prior lien on the six hundred and thirty eight and one half acres of land in the bill mentioned. That the oldest judgment against lands of Daniel and Emmitt J. O'Brien is Ira Hart's and the prior lien on all the lands in the bill mentioned, except the two hundred acres conveyed to A. G. Reger,

1879
Special Term.

McClaskey &
Crim et al.
v.
O'Brien et al.

trustee, and the five hundred and sixty acres conveyed to Lewis Wilson, trustee.

The commissioner also reports, that the judgment in favor of McClaskey & Crim and John Weaver, use, &c., rendered at the same term of court, are next in priority, except on the tracts of land last above excepted; that the deed of trust executed to Lewis Wilson, to secure said Hoff in said $2,000.00, with interest as aforesaid, is the prior lien on the five hundred and sixty acres of land in the bill mentioned and described in said deed of trust.

As we have seen, the court by its decree of the 6th of March, 1867, confirmed the last named report of its commissioner, and ascertained and determined that the said deed of trust upon the said two hundred acres, to secure Anthony Reger for $600.00, constituted a lien upon the two hundred acres of the five hundred and sixty acre tract of land, which is first entitled to be paid. The court also ascertains that the judgment in the case of plaintiff Hart, for the sum of $184.51, with interest from the 29th day of December, 1856, and $4.03 costs at law, recovered against the said O'Brien's and John Wentz constitutes a lien on the seven hundred and sixty-five acres of land patented to Daniel O'Brien, and should be paid out of the sale of the said last named tract of land, and that the same also constitutes a lien on any surplus which may arise from the sale of the six hundred and thirty-eight and one half acres of land, purchased by said O'Briens from John Davis Day, after the payment of the purchase-money thereinafter mentioned. The court also says: "It appears from said report that the trust in favor of Hanson L. Hoff for $2,000.00, is a lien on the said five hundred and sixty acres third in priority, &c." The court also says, and it ascertains in said decree, that the said judgment of plaintiffs, McClaskey & Crim, and also the judgment of John Weaver for the use of William P. Woodruff, are liens on the seven hundred and sixty-five acre tract patented to said Daniel O'Brien and

1879
Special Term.

McClaskey &
Crim *et al.*
v.
O'Brien *el al.*

on the six hundred and thirty-eight and one half acre tract of land after paying the purchase-money thereon, and the judgment of the plaintiff Hart, and that the judgment of the plaintiffs McClaskey & Crim also constitutes a lien on the five hundred and sixty acre tract of land conveyed by the defendant, E. J. O'Brien, to the defendant, Hoff, next in priority after the trust in his favor.

It will be perceived that the court does not by this decree declare the judgment of the plaintiff, Hart, to be a lien on any part of the said five hundred and sixty acre tract. The court in this decree, as may be seen by reference thereto, does not decree the sale of any part of said five hundred and sixty acre tract except the two hundred acres thereof covered by the said Anthony Reger trust, and that is decreed to be sold expressly for the payment of the Anthony Reger trust. And it does not even declare to whom the balance of the purchase-money shall be paid, or how it shall be applied after paying the said Anthony Reger debt. But, as we have seen, the said report of the commissioner was by consent of parties, according to the face of the record, recommitted to the same commissioner. See decree of 18th of May, 1867.

It further appears that said commissioner, whose name is Simon Buckingham, filed another report on the 9th day of April, 1870, to which there were exceptions filed, and that the court on the 19th day of April, 1870, sustained one of the exceptions to said last named report, on the ground that the said report had not been retained by the commissioner ten days in his office after completion ; and the other exceptions being waived, the court again recommitted the report of said commissioner for further report, &c.

It further appears that on the 29th day of March, 1871, or thereabouts, said commissioner made another report, which in fact is made and returned in connection with his said second report and refers thereto ; and afterwards, on the 17th day of April, 1871, the causes again came on

1879
Special Term.

McClaskey &
Crim *et al.*
v.
O'Brien *et al.*

to be heard together, and the court made the decree therein of that date, the substantial parts of which have already been stated. It appears by this decree that exceptions were filed to the commissioner's last named report; but it does not appear on the face of the decree by whom they were filed, but it does appear that the court overruled the exceptions. I think it is quite manifest that the copy of exceptions filed with the petition of the appellants for an appeal and *supersedeas* from and to the said decree of the 17th day of April, 1871, are not the exceptions referred to and overruled in and by that decree. These exceptions are eight in number; and the first of them clearly refers to the report of the 9th of April, 1870, which, as we have seen, were in part acted on by the court on the 19th day of April, 1870, and the other parts of the exceptions waived at that time, evidently because of the recommittal of the report with the directions contained in the said last named decree. In addition to this, the sixth exception is by defendant, Mary Hall, the widow of Enoch Hall, deceased, and controverts the correctness of the commissioner's report in reporting the land of her said deceased husband as being liable, &c.; but the commissioner in his last or supplemental report expressly reports, that "all the other lands sold and conveyed by the said O'Briens remain as stated in your commissioner's report filed in the above cause April 9, 1870, except the Enoch Hall land, which should not have been reported." It is hardly reasonable to suppose that Mrs. Hall would except to a report which exempted the land of her deceased husband from liability upon which she was insisting. When exceptions to a report of a commissioner are filed in a cause, ordinarily the clerk should endorse thereon the time when filed, or otherwise something should appear by which the Appellate Court may be able to identify the exceptions passed upon by the court below. But for the purpose of identifying the exceptions, the Appellate Court may look into the whole record.

1879
Special Term.

McClaskey &
Crim et al.
v.
O'Brien ee al.

But, without dwelling further upon this subject, it seems to me that there is sufficient appearing in the record in this cause by way of exceptions and otherwise to enable this Court to review the said decree of the court of the 17th day of April, 1871, &c., upon the errors assigned by the petitioners in their petition and in argument. I think it satisfactorily appears in this cause, that at the time defendant, Hoff, purchased said five hundred and sixty acre tract (sometimes called the six hundred acre tract) of Emmitt J. O'Brien, and received a general warranty deed therefor, he had actual notice of the judgments of plaintiffs, McClaskey & Crim and Hart. But it seems to me that, so far as appears by the record, it was not the actual intention or purpose of said Hoff in his said purchase to defraud any of the plaintiffs, or either of the creditors of said O'Briens, it appearing that the said O'Briens had other lands out of which the plaintiffs said two judgments might probably have been made, or any others of which defendants had notice either actual or constructive before or at the time of the conveyance to him. Nor does it appear that said Hoff did not contract to pay a fair price for the land. It does appear that he agreed to pay $6,500.00 for the land, a great part of which was applied to the payment of trust-liens on the land, some of which, if not all, were under the law and facts appearing prior in right to satisfaction as liens to either of the judgments of the plaintiffs, it not appearing, as I think, that either Hoff or Anthony Reger at the date and record of their respective deeds of trust, had notice of the plaintiffs' said judgments, or either of them, or any other judgments against said O'Briens or either of them.

The Code of 1860 of Virginia in chapter one hundred and eighty-six, section eight, which was substantially in force with us, when said deeds of trust took effect, and in fact until the Code of this State of 1868 took effect on the 1st day of April, 1869, provides that "no judgment shall be a lien on real estate, as against a purchaser

1879
Special Term.

McClaskey &
Crim *et al.*
v.
O'Brien *et al.*

thereof for valuable consideration without notice, unless it be docketed according to the third and fourth sections of this chapter in the county or corporation wherein such real estate is, either within a year next after the date of such judgment, or ninety days before the conveyance of said estate to such purchaser." The seventh section of chapter one hundred and thirty-nine of the Code of 1868 of this State provides, that "no judgment shall be a lien on real estate, as against a purchaser thereof for valuable consideration without notice, unless it be docketed according to the third and fourth sections of this chapter in the county wherein such real estate is, either within ninety days next after the date of the judgment, or before a deed therefor to such purchaser is delivered for record to the recorder." As before stated, the deed of Emmitt J. O'Brien bearing date the 13th day of July, 1859, seems to have been first admitted to record in Barbour county on the 15th day of July, 1859, and neither of the plaintiffs' judgments, nor any of the other judgments reported by the commissioner and mentioned in said decree, are sufficiently shown to have been docketed in Barbour county according to law, so as to affect a purchaser for value without notice, before the deed from E. J. O'Brien to said Hoff for said five hundred and sixty acres of land was admitted to record, unless it be the judgment of McClaskey & Crim, and the commissioner reports, that their judgment was rendered at the spring term, 1858, and docketed February, 1859, but he does not state where docketed, nor does any copy of such docketing appear any where in the record. It is true, some verbal testimony appears in the record tending to show, that the judgment of McClaskey & Crim was docketed in the clerk's office of Barbour on the 15th day of February, 1859, within a year from its rendition; but no copy from the record of the docketing is produced, and the failure to produce it is not sufficiently accounted for to lay a foundation for the introduction of verbal testimony to prove the docketing.

1879
Special Term.

McClaskey &
Crim *et al.*
v.
O'Brien *et al*

But as to the judgments of plaintiffs this is immaterial, as Hoff at the time of his purchase had notice of these two judgments. The judgments in the decree mentioned of the plaintiffs and of Camden and Hoffman and Craver, or Craver use of Goff, are the only judgments which appear to have been rendered, before the said deed of conveyance to said Hoff for said five hundred and sixty acres of land was admitted to record; and there is no pretence that either of the judgments of Camden and Hoffman or Craver use of Goff were ever docketed in Barbour county, and I do not think it sufficiently appears by the record that said Hoff had notice of said two last named judgments prior to the time of his purchase and the record of the deed of conveyance to him of said five hundred and sixty acres, or for several years after the commencement of these suits.

It will be seen that the court in its said decree of the 17th day of April, 1871, does not confirm the report of the said commissioner, it simply overrules certain exceptions to said report. Though I am satisfied from what appears in this cause, that one or more of the exceptions to the commissioner's report, on which the court acted on the 17th day of April, 1871, by its decree, in effect put in issue the times of the docketing of the said judgments, still I am unable to find in the record a copy of the docketing of any of the judgments reported in the case except the judgment of John Reger, which is a judgment rendered in the county of Upshur. "If a judgment is obtained which is a lien on the defendant's lands, and he sells and conveys part of it, the judgment-creditor ought to proceed in the first instance against the unsold portion, and if he takes that which has been sold in execution, the purchaser may be subrogated to the judgment. *In re McGill*, 6 Barr 514; *Champlin* v. *Williams*, 9 *Id*. 340. As this equity is obligatory on the vendor, so it may be enforced against one claiming under him subsequently as a purchaser, whose right cannot rise higher than his. Hence the established rule of Amer-

Syllabus 2.

Syllabus 3.

1879
Special Term.

McClaskey &
Crim et al.
v.
O'Brien et al.

ican jurisprudence, that where land subject to an encumbrance is sold successively in parcels, each of them will be liable in the inverse order of alienation. "If a judgment or mortgage is a lien on three tracts of land belonging to the same person, who sells one of them to A., another afterwards to B. and finally the third to C., A. is entitled to exoneration at the expense of B. and C. while B. has a similar right against C., and if an execution is issued on the judgment, the court may direct that C.'s land shall be first exposed to sale, next B.'s, and that A.'s shall not be held, unless the other tracts do not produce enough to satisfy the debt; *Morey's Appeal* 4 Barr 80." White & Tudor's Lead. Cases in Eq., 4 Am. ed. from 4 Eng. ed., vol. 2, part 1, 291. According to White & Tudor, p. 292 in *Hurd* v. *Eaton*, 22 Ill. 122, it was held that a court of equity would compel a judgment-creditor to exhaust the property of the judgment-debtor before levying on land which, though subject to the lien of the judgment, had become the property of a third person through a sale or a conveyance, *Gill* v. *Lyon*, 1 Johns. Chy. 447; *Clowes* v. *Dickinson*, 5 Johns. Chy. 295; 9 Cowen 403, bearing somewhat on same principle. Where land, which is subject to the lien of a mortgage or other paramount incumbrance, is sold in parcels successively to different persons, the buyers are *prima facie* chargeable in the inverse order of alienation. *Jones* v. *Myrick*, 8 Gratt. 179. See Tudor & White, Lead. Cases in Eq. Eq. 293, and the numerous cases there cited.

Syllabus 4.    "Where a grant of part of the land covered by an encumbrance contains a covenant of warranty, there can be no doubt that the burden is to be borne exclusively by the residue of the land in the hands of the grantor. This results not from the technical operation of the covenant, but from evidence which it affords of the intent; and the effect will be the same, if it appears unmistakably from any part of the deed, or from a collateral writing, that the vendee is to have an unencumbered title." *Cooper* v. *Bigley*, 13 Mich. 474; White & Tudor, 296, 297.

In *Cooper* v. *Bigley*, the court held, "that the rule, 1879 Special Term.
that the vendor's property must be exhausted before re- McClaskey & Crim *et al.* v O'Brien *et al.*
course can be had to the vendee's, depends on the justice
of paying a man's debts out of his own estate instead of
that which he has conveyed to another. It does not
therefore necessarily depend on the existence of a cove-
nant of warranty in the deed. An owner may in dis-
posing of his property charge any part of it with an en-
cumbrance which is common to the whole; and if he
does, the purchaser will take it subject to the burden,
whatever may be the relative date of his deed. *Welch* v.
*Beers*, 2 Allen 151; *Kilburn* v. *Robbins, Id.* 466, 471.
A covenant of warranty may have a material influence
in showing that the grantee is to be exempt from a par-
amount charge; but there is no sufficient ground for
holding that such an intent cannot be deduced where the
title is not warranted. On the contrary, the doctrine,
that the lien should be enforced against the vendor's
land, before proceeding against that which he has parted
with, applies, unless there is evidence of an opposite de-
sign. This is the inference of common sense; because
one, who sells a part of a tract which he has mortgaged,
may reasonably be supposed to intend that the portion,
which remains undisposed of in his hands, shall be ap-
propriated in the first instance to the payment of the
debt. The administration of this rule depends primarily
on the maxim *prior in tempore potior in jure*". White
& Tudor's Lead. Cases in Eq. 296, 297, 4 Am, ed. from
4th Eng. ed., 2d vol. 1st part.

"If a part of an encumbered tract is sold to A. and the
residue to B., each has an equal right against the vendor;
but A. has the advantage of being first in point of time.
If B. means to be secure, he should enquire whether
the title to the residue is still in the vendor, and as the
registry is open to him for this purpose, if A's deed has
been duly recorded, it will operate as constructive notice.
*Chapman* v. *West*, 17 N. Y. 125. It follows conversely,
that the rule will not be enforced in favor of a purchaser

1879
Special Term.

McClaskey &
Crim *et al.*
v.
O'Brien *et al.*

where title does not appear of record, unless the detect is supplied by notice in some other form. *Chan* v. *Wood-bury*, 6 Cush. 143. Under the circumstances the second purchaser presumably acts in the belief that he is the first, and should be protected in a right which has been acquired in good faith and for value. *Brown* v. *Simmons*, 44 N. H. 478, 479 ; *White & Tuder*, Lea., Cas. in Eq. same vol. and part 297."

"The rule under consideration grows out of the relation between the vendor and vendee; it is because the vendee may throw the burden of the paramount encumbrance on the vendor, that a subsequent purchaser from the vendor is bound. The application of the rule, therefore, depends upon the contract of sale. When the vendor conveys with a covenant of general warranty, or against encumbrances, he is manifestly liable for any lien or charge on the land. The effect is the same, agreeably to the authorities in Pennsylvania, when the deed purports to convey the land, as distinguished from the right, title and interest of the vender ; *Wolbert* v. *Lucas*, 10 Barr 73 ; see *Cooper* v. *Bigly*, 13 Mich. 474 ; 2 Smith's Leading Cases, 737, 7th ed. There is a manifest difference, when a vendee of part of the land covered by a mortgage agrees in terms, or by a necessary implication, to be answerable for the whole of the mortgage debt in consideration of a corresponding deduction from the purchase-money. Under these circumstances the equity is reversed, and the vendor and those claiming under him will be subrogated to the mortgage against the vendee, and any one to whom he subsequently conveys." Same author and vol. last above referred to, 303, and the several cases there cited.

Syllabus 5.

White *v.* Tudor, in their Leading Cases in Equity, vol. 2 part 1st 4 Am. ed. from 4 Eng. ed. at page 270 say: "The equity of a judgment-creditor to marshal the assets as a means of obtaining payment out of a fund that is not subject to the lien of the judgment, will not be enforced against a *bona fide* purchaser. *Rruner's Ap-*

1879
Special Term.

McClaskey &
Crim *et al.*
v.
O'Brien *et al.*

Syllabus 6.

*peal* 7 Watts & S. 259; *McCormick's Appeal,* 7 P. F. Smith 54; See *Wethers* v. *Carter,* 4 Gratt. 407; *Bruner's Appeal,* 7 Watts & S. 269; *Averall* v. *Wade,* 2 L. & G. 252; *Eberhardt's Appeal* 8 Watts, & S. 228. * * "If one of two tracts of land which are subject to a judgment lien be sold by the defendant in the judgment, a subse-. quent judgment creditor is not entitled to subrogation to the prior lien, because such a decree would conflict with the equity of the purchaser. Where land subject to an encumbrance, which is also a charge on the land belonging to the vendor, is sold with an express or implied agreement that the title shall be clear, the vendee is not liable to contribution. It is the duty of the ven- dor who has been paid in full to discharge an encum- brance on the land, and if the lien extends to other land, that, and not the land conveyed, is the primary fund for the payment of the debt."

The same authors at page two hundred and seventy one say: " It seems that a paramount judgment will not be marshalled as against a grant with warranty to a vol- unteer, in order to leave the real estate of the grantor free for the discharge of a judgment which has been en- tered subsequently to the grant, *Thompson* v. *Murray,* 2 Hill Ch. 204, 213; *Cumming* v. *Cumming,* 3 Kelly 460, because such a gift is valid against the donor, and there- fore equally valid against one claiming under him as a creditor, unless it can be impeached for fraud."

Again at page two hundred and fifty two the same au- thors say: " But marshalling will not be enforced to the prejudice of a third party. Thus in *Averall* v. *Wade,* L. & G. Sugd. 252, where a person, being seized of several estates and indebted by judgments, settled one of the es- tates for valuable consideration, with a covenant against encumbrances, and subsequently acknowledged other judgments, it was contended by the subsequent judgment- creditors, that as they only affected the unsettled estates, on the principle in *Aldrich* v. *Cooper,* as they had only one fund, they had a right to compel the prior judg-

1879
Special Term.

McClaskey &
Crim *et al.*
v.
O'Brien *et al.*

ment-creditors who had two funds—the settled and un-settled estates—to resort to the settled estates; or at any rate, that the settled estates ought to contribute to the payment of the prior judgments. Lord Chancellor Sugden, however, held that the subsequent judgment-creditors had no equity to compel the prior judgment-creditors to resort to the settled estates; on the contrary that the prior judgments should be thrown altogether on the unsettled estates, and that the subsequent judgment-creditors had no right to make the settled estates contribute; observing, after a close examination of *Aldrich* v. *Cooper*, that upon the whole of the case you will find Lord Eldon in the application of the principle carefully avoids dealing with the rights of third persons intervening." See other cases cited on same page.

And at page two hundred and eighty five, the same authors say: " As subrogation is an equity, it will not be enforced where the effect will be to prejudice or impair the rights of third persons, it being well settled that where both parties have an equal claim to the consideration of a chancellor, the law will be suffered to take its course. *Miller* v. *Jacobs*, 3 Watts 437; *Ziegler* v. *Louk*, 2 Watts 206; *Erb's Appeal*, 2 Pearson & Watts 296; *McGinnis's Appeal*, 4 Harris 445; *Wallace's Estate*, 9 P. F. Smith 401; *Withers* v. *Carter*, 4 Gratt. 407."

As it seems to be established that where the owner of several tracts of land, against which there are judgment-liens undocketed, sells and conveys one of said tracts, such judgment-creditors are required in equity to first resort to the unsold lands or tracts, it may happen by the negligence and failure of the said judgment-creditors to docket their judgments as required by law, that they may lose their right to proceed for satisfaction of their judgments either against the said purchaser who had notice, or against the unsold land; as for instance, suppose the owner of such unsold land should subsequently sell and convey the same to another person for value, who had no notice of said undocketed judgments,

1879
Special Term.

McClaskey &
Crim *et al.*
v.
O'Brien *et al.*

would not the last named purchaser, who had no notice of said undocketed judgments, be entitled to protection in equity against the same? And if so, under such circumstances would equity in such case permit such judgment-creditor to resort to the lands of the first purchaser, who had notice, for the satisfaction of his judgments? But I do not decide these questions now, as I do not think they are, as the case now stands before us, presented in such a manner as to justify this Court in now deciding the same. These questions may arise upon the return of the case to the court below, or they may not— they have not been argued before us.

In the case of *Renick* v. *Ludington et al.*, 14 W. Va. 367, it was held by this Court: "1. As between the judgment-creditor and debtor the statute requiring the judgment to be docketed has no application or force. 2. Section five of chapter one hundred and thirty-nine of the Code gives a positive and express lien of a judgment against all the lands of or to which the debtor shall be possessed or entitled at or after the date of such judgment, or if it was rendered in court, at or after the commencement of the term at which it was so rendered ; and such lien continues until it is in some legal manner discharged. 3. Where various judgments are rendered against a debtor, and the junior judgments are docketed, and the senior undocketed, and in this state of things the debtor conveys a part of the land to a purchaser for valuable consideration without notice of the undocketed judgments, and the docketed judgment-liens are not discharged, the liens of the undocketed judgments must be discharged out of the proceeds of the unsold lands, although the effect might be to require the holders of the docketed judgments to resort in whole or in part to the land so conveyed for satisfaction of their judgment-liens. 4. Section seven of chapter one hundred and thirty-nine was enacted for the protection of purchasers for valuable consideration without notice of judgments ; but that protection only extends to the land so conveyed to such pur-

*Syllabus 8.*

*Syllabus 9.*

*Syllabus 10.*

*Syllabus 11.*

1879
Special Term.

McClaskey &
Crim et al
v.
O'Brien et al.

chaser, it being liable to the satisfaction of judgments docketed only." Of course this last section of the syllabus means, or was intended to mean, liable for the satisfaction of judgments of which the purchaser had notice or which were docketed according to law, and to such judgments only. See said seventh section and also the opinion of Judge Johnson in said case.

Syllabus 12.     In the case of *Marling* v. *Robrecht et al.*, 13 W. Va. 440, this Court held, that " When there are various liens on lands of a judgment-debtor, it is error to decree a sale of the lands without first ascertaining the amounts of the liens and their priorities, for the reason that to decree such sale before ascertaining the amount of the several liens and their respective priorities has a tendency to sacrifice the property, by discouraging the creditors from bidding, as they probably would, if their right to satisfaction of their debts, and the order in which they were to be paid out of the property, had been previously ascertained."

It may become necessary, equitable and proper in these causes in case the unsold land of the O'Briens should not sell for sufficient to pay the judgments of the plaintiffs in these causes, and any other judgment entitled to priority of payment over the said judgments of the plaintiffs out of the proceeds of said unsold lands, under circumstances to resort to the said five hundred and sixty acre tract of land so conveyed by said Emmitt J. O'Brien to said Hoff to raise the deficiency; and in that case the said last named deed would become inoperative and void as to the plaintiffs' said judgments, in so far at least as necessary to the payment of any balance or balances remaining unsatisfied thereon, if any, which the court may ascertain under circumstances to be equitably chargeable thereon. In case this should happen, a further question will arise as to whether the court in directing the sale of said five hundred and sixty acres should not allow said Hoff the benefit of the said deed of trust executed to secure said Hoff his said $2,000.00 debt, with its proper

1879
Special Term.

McClaskey &
Crim *et al.*
v.
O'Brien *et al.*

interest, and also the benefit of said deed of trust executed to secure the said Anthony Reger said $600.00, with its proper interest, which said Hoff paid.

I will now proceed to consider these questions; but will first consider the question as to the $2,000.00 deed of trust of said Hoff, as the principles involved bearing upon it are somewhat, and perhaps materially, different from those applicable to the Reger deed of trust debt, which Hoff paid.

In the case of *Corwin et al.* v. *Collett's ex'rs et al.*, 16 Ohio St. 289, it was held, that " where a mortgagor holding the equity of redemption in trust wrongfully conveyed the mortgaged premises to the mortgagee, with notice of the trust, giving him new security for the debt, and the *cestui que trust* sets the conveyance aside, the mortgage does not merge in the conveyance, but stands for the security of the trustee." In *Edgerton et al.* v. *Young et al.*, 43 Ill. 464, it was held : "1. A mortgagee may procure a conveyance of the mortgaged premises from the mortgagor without necessarily merging the lien of his mortgage in the greater estate. 2. When a greater and less estate meet in the same person a merger does not necessarily follow. That will depend upon the intent and the interest of the parties ; and if a court perceives it is necessary to the ends of justice that the two estates should be kept alive, it will so treat them." Justice Lawrence delivered the opinion of the court in this case, and at page four hundred and sixty-eight he says : "When a greater and less estate meet in the same person, a merger does not necessarily follow. That will depend upon the intent and interest of the parties, and if a court perceives it is necessary to the ends of justice that the two estates should be kept alive it will so treat them. Thus, if a mortgage is the oldest lien, and is for an amount exceeding the value of the premises, and the mortgagee, to avoid the expense of foreclosure, takes a conveyance from the mortgagor, a court of equity should not permit the mortgaged premises to be swept away

Syllabus 13.

1879
Special Term

McClaskey &
Crim *et al.*
v.
O'Brien *et al.*

from him by a junior judgment-creditor, without payment of the mortgage, under the pretence that its lien had been lost by merger. *Campbell* v. *Carter*, 14 Ill. 289; *Jarvis* v. *Fink*, 14 Ill. 398; *Brown* v. *Blydenburg*, 3 Seld.—; *Gillet* v. *Campbell*, 1 Denio 520."

In the case of *Stantons* v. *Thompson*, 49 N. H. 272, it was held that "where by a release of the right of redemption the two estates are united in the mortgagee, the mortgage will be upheld as a subsisting source of title, whenever it is required by the justice of the case or the intention of the parties. Whether the mortgage shall be kept on foot or not depends ordinarily upon the intention of the parties, but in order to protect the mortgagee against an intervening title, the law will uphold the mortgage, even when the parties had undertaken to discharge it, unless injustice would be done thereby." See the opinion of Bellows, chief justice in this case, at pages 277 and 278 and the numerous authorities there cited.

In the case of *Hnnt* v. *Hunt*, 14 Pick. 384, 385, Shaw, C. J., lays down the rule thus: "That to effect a merger at law, the right previously acquired and the right subsequently acquired, in order to coalesce and merge, must be precisely co-extensive, must be acquired and held in the same right, and there must be no right outstanding in a third person to intervene between the right held and the right acquired. If any of these requisites are wanting, the two rights do not merge, but both may well stand together."

In the case of *Bell* v. *Tenney et al.*, 29 Ohio St. 240, "the assignee of a senior mortgage received from the mortgagor a conveyance of a mortgaged property in consideration of the sum due on the mortgage and additional sum paid, *Held:* That such conveyance did not in equity operate to merge or extinguish the mortgage as between such assignee and a junior incumbrancer, it not appearing to have been the intention of said assignee that a merger should take place." See opinion of the court delivered by Judge Boynton.

In *Corwin* v. *Collett's ex'rs.*, 16 Ohio St. —, Judge
Welch, who delivered the opinion of the court, says: McClaskey &
Crim *et al.*
v.
O'Brien *et al.*
"A leading feature of the law is, that merger will never
be presumed against the equities of the parties. To
work a merger, there must be an unequivocal act of
the party to be affected by it absolutely and irrevocably
relinquishing the right to be merged." See on this sub-
ject *Gardner* v. *Astor*, 3 Johns. Chy. 53; *Loomer* v.
*Wheelright*, 3 Sandf. Chy. 157; *James* v. *Morey*, 2 Cow.
246; *Clary* v. *Owen*, 15 Gray, 521; *Gregory* v. *Savage*, 32
Conn. 264; *Vanrice* v. *Bergen*, 16 Ia. 562; *Bell* v. *Wood-
ward*, 34 N. H. —; *Barker* v. *Flood*, 103 Mass. 474;
2 Wash. on Real Property, 193; Kent's Com. 4th vol.
103–4; 1 Wash. on Real Property 564; 2 Story Eq.
§1035 b. note and cases; 6 Johns. Chy. 423–4; *Thomp-
son* v. *Chandler*, 7 Green. 381; *Holden* v. *Pike*, 24 Me.
437; *Hatch* v. *Kimball*, 14 Me. 9; *Simonton* v. *Gray*,
34 Me. —; *Freeman* v. *Paul*, 3 Green. 260; *Gibson* v.
*Crehose*, 3 Pick. 475.

In the case in 35 N. H. 421, of *Ladd* v. *Wiggin*, where a
*fraudulent* conveyance had been made by the mortgagor
to the mortgagee, and the note and mortgage had been
surrendered to the mortgagor, the court say : "The gen-
eral rule of law between parties is, that when a contract
is avoided for any cause, each is restored to his pre-
viously existing rights. The note was given up upon
taking the fraudulent conveyance. * * * The very
avoiding of the fraudulent conveyance revived and re-
newed the former valid lien, and restored the parties to
their original position. * * It is well settled that noth-
ing *but payment in fact* of the debt or a release by the
mortgagee will discharge a mortgage."

Perry on Trusts, section three hundred and forty seven,
page four hundred and twenty eight, says: "Of course
in the law estates will merge wherever the interests meet;
but courts of equity will preserve the estates separate,
when the rights or interests of the parties require it. If

the trustee acquires the equitable interest by any breach of his duty, or by fraud, courts will not allow it to merge. So if the legal estate comes to the *cestui que trust* by a conveyance which turns out to be void, there will be no merger.    Whether charges upon an estate as mortgages will merge in the legal title upon being paid off, depends upon the intention of the parties, and frequently upon the interests and equities between them.    See authorities cited by Perry in notes two, three, four and five.    See also as bearing on the subject 6 Serg. & Rawle. 559; 5 Peters 481; *Hughes* v. *Edwards*, 9 Wheat. 499; *Warner* v. *Winslow,* 1 Sanf. Chy. 430; *Frische* v. *Kramer's lessee,* 16 Ohio 138.

The plaintiffs in these causes are seeking in effect to set aside the said deed to Hoff for said five hundred and sixty acres so far as any balance upon their said judgments may remain due.    If they are entitled to do this. in any event, it seems to me that said Hoff is entitled in equity under the circumstances in these causes, upon the authorities I have cited and on principle, for his protection to the benefit of his trust-deed and the lien thereof for his $2,000.00 debt and its lawful interest.    The plaintiffs in effect are seeking to intervene between the said deed of trust for the use of said Hoff and the deed to him from said Emmitt J. O'Brien, upon the ground that the deed of trust debt was paid and extinguished in the transaction of the sale and conveyance of the land, and if said deed of conveyance is inoperative as to the plaintiffs' judgments, and should be so declared, it must and should in equity in this case restore or continue the said trust-lien and debt for the protection of said Hoff against said judgments.

I now proceed to consider as to the Anthony Reger trust and the debt therein secured and paid by said Hoff. This deed of trust was in fact executed on the 6th day of October, 1856, and was duly admitted to record on the 28th day of September, 1858, a few months after Hoff's deed of trust was admitted to record.    There is no claim

1879
Special Term.

McClaskey &
Crim *et al.*
v.
O'Brien *et al.*

or pretence in these causes that said Anthony Reger had any notice, either actual or constructive, of the existence of plaintiff's said judgments, or any other judgments appearing or set up in the record, at the time of the execution or recordation of his said deed of trust upon two hundred acres of the said five hundred and sixty acre tract )sometimes called in the record six hundred acres or thereabouts). This deed of trust then, so far as appears in these causes, was a lien prior and paramount to any of said judgments at the time of its admission to record and up to the time of its payment or redemption to said Hoff. Under these circumstances Hoff having paid or redeemed said Reger deed of trust, is he, in the event it should be proper to declare said deed of conveyance to him for said land inoperative or void as to plaintiff's said judgments or any part thereof, entitled to claim the benefit of the lien of said Reger deed of trust for $600.00, with its interest? Hoff purchased the tract of land from E. J. O'Brien at the price of $6,500.00; and said O'Brien was to make, and did make, him a general warranty deed for the land, and Hoff had the right in this case to apply a sufficient amount of the purchase-money for his own protection to the payment or redemption of the Anthony Reger trust-debt or the purchase thereof, which he did. If Hoff extinguished said Anthony Reger trust-debt and the lien thereof by such payments for all purposes and in any event, and it clearly appears [Syllabus 16.] that such was the intention of the parties at the time, and a release was executed, then perhaps he might not be entitled to the benefit of the lien of the Reger deed of trust debt for his protection in a court of equity against intervening judgment-debts; but I do not think it does clearly so appear, and it seems to me that in equity under the circumstances he is entitled to be regarded as a purchaser of said Reger trust debt and the lien thereof, or to the benefit of it for his protection against the plaintiff's said judgment, it not appearing that injustice could thereby be done, unless the release of Anthony Reger,

107

executed and recorded about seven years after the commencement of these suits and over one year after the deed of trust had been ascertained and declared a lien paramount on said two hundred acres of land, requires a different conclusion. It might be different under some other circumstances.

Some of the principles decided and held in a number of the cases, to which I have referred in considering the Hoff deed of trust, apply to the question now under consideration. Judge Story in his work on Eq. Jurisprudence, vol. 1, § 1035, says among other things: " Undoubtedly by our law the satisfaction of the principal debt by payment or otherwise will be deemed in equity an extinguishment of the mortgage, unless there is an express or implied contract for keeping alive the original security." And he refers to *Chester* v. *Willis*, Amb. 246; *Compton* v. *Oxendon*, 2 Ves. Jr. 264; 2 Fonblank, Eq. book 2, ch. 6, § 8. In *Moore* v. *Beasem*, 44 N. H. 215, it was held that: "Every one may exercise the right of redemption who is interested in the mortgaged estate with the mortgagor; and redemption will be decreed according to the priority of the claimants. A third person, paying the debt of the mortgagor, may be substituted in his place for his own protection and without any written assignment of the mortgage." Judge Nesmith in delivering the opinion of the court in this case said: "A third person, discharging a bond and mortgage for his own safety, may be substituted in the place of the obligor or mortgagor and retain the bond and mortgage. *John G. Vester's Case*, 2 Johns. Chy. 504. In equity, the party entitled to an assignment of a mortgage may be regarded as subrogated to the rights of a mortgagee without the assignment of the deed of mortgage. *Aiken* v. *Gale*, 37 N. H. 505; *James* v. *Robinson*, 10 N. H. 219; *Parkman* v. *Welsh*, 19 Pick. And this right of subrogation, though originally a doctrine of equity, has become recognized as a legal right. 1 Wash. Real Prop. 575; *LaFarge* v. *Hester*, 11 Barb. 159. There are numerous other author-

1879
Special Term.

McClaskey &
Crim *et al.*
v.
O'Brien *et al.*

1879
Special Term.

McClaskey &
Crim *et al.*
v.
O'Brien *et al.*

ities that hold that payment of a debt secured by a mortgage may operate either as a discharge of the mortgage, or as an assignment, as may best subserve the purposes of justice. *Hastings* v. *Stevens*, 29 N. H. 573; *Hatch* v. *Kimbal*, 7 Shep. 9, and numerous other authorities cited by both sides."

In *Hinds* v. *Ballou*, 44 N. H. 619, it was held, that "where one having a right of redemption redeems the mortgaged premises by the payment of the money, the transaction will be treated as an assignment of the mortgage, if this is manifestly for the interest of the party so redeeming, and is not inconsistent with the justice of the case, where no contrary intent is expressed or necessarily implied." In this case Bartlett, Judge, in delivering the opinion of the court said, that the payment of money to redeem will operate as a discharge, or as an assignment substituting him in the place of the mortgagee, as may best serve the purposes of justice; and as it would have been manifestly for Lewis's interest to treat the transaction as an assignment, such an intention is to be presumed, as it would not be inconsistent with the justice of the case, and as no contrary intent is expressed or necessarily implied. The judge refers to *Adams* v. *Hill*, 29 N. H. —; *Bell* v. *Woodward*, 34 N. H. 96; *Wilson* v. *Kimball*, 27 N. H. 307; *Hunt* v. *Hunt*, 14 Pick. 384, 1 Hill Mort. 339.

In *Aiken* v. *Gale*, 37 N. H. at pages 504, 505, Eastman, Judge, in delivering the opinion of the court says: "Payment of a debt may operate either as a dischage of the mortgage or an assignment, as may best subserve the purposes of justice. If the payment be made by a third person who has an interest to protect, it may operate as an assignment, even if the mortgage be formally discharged. One who has paid money due upon a mortgage of land, to which he had a title which might have been defeated thereby, has a right to hold the land as if the mortgage subsisted, until he shall have received the money due on it from some who one is entitled to redeem.

1879
Special Term.

McClaskey &
Crim et al.
v.
O'Brien et al.

In equity the party entitled to an assignment of a mortgage may be regarded as subrogated to the rights of a mortgagee without an assignment." The judge refers to a number of authorities which may be seen in his opinion. "There is little doubt that a payment by one who has an interest to protect, although remote or slight, may take effect as a purchase, if such an interpretation will subserve the purposes of justice." 2d vol. 1st part White & Tudor's Lead. Cases in Eq. 4th Am. ed. from 4th Eng. ed. 288.

As we have seen, this deed of trust was by the court declared a lien paramount on the said two hundred acres of land by its decree of the 6th day of March, 1867, and the deed of release of Anthony Reger is dated the 22d of August, 1868, and was recorded on the 27th day of August, 1868, which is more than a year after the rendition of said decree and about seven years after the commencement of these suits. If the deed of release had been executed at the time of the payment of the trust-debt by Hoff and with his consent, then perhaps I might feel authorized to say from all that appears in these causes, that the deed of trust debt and the lien thereof was in equity released and extinguished and intended by the parties to be released and extinguished for all purposes and in any event, but as the release was not then executed, I do not now decide that point, nor do I mean to be understood as deciding that if the release had been executed at the time, it would be sufficient to establish that it was the intention of the parties that such payment and release should extinguish the deed of trust debt and the lien thereof for all purposes and in every event. In the absence of evidence clearly establishing that such was the intention of the parties at the time that question does not fairly arise here. Nor do I mean to decide, that in every case where a release is executed some time after the payment, a court of equity will hold the deed of trust lien still existing for the protection of the purchaser against intervening judgment-creditors; nor that there

1879
Special Term.

McClaskey &
Crim *et al.*
v.
O'Brien *et al.*

may not be cases in which a court of equity would hold the deed of trust debt and the lien thereof extinguished by the purchaser, though no release was executed.

The deed of release was made while the said decree of March 6, 1867, was in full force, and a very short time before Hoff filed his first answer, and at a time when he was evidently seeking protection against said judgment in any event by every means to which he was legally and equitably entitled ; and under such circumstances it cannot reasonably be presumed, that said release was procured to be executed by said Hoff, or with his knowledge and consent with the purpose or intent of extinguishing the same from thence for every purpose and in every event. Anthony Reger could not by his own will extinguish the rights of Hoff by executing said deed of release under the circumstances of this case. Hoff evidently paid the Reger trust-debt for his own protection and benefit, and not for the benefit of the plaintiffs or other judgment-creditors. Under the circumstances of these causes and authorities I have cited bearing upon the question it seems to me that, in case it should be proper to resort to said five hundred and sixty acres of land to pay the plaintiffs' said judgments, or any balances thereon, said Hoff should be entitled to the benefit of the lien of said Anthony Reger deed of trust for the amount thereof, with its proper interest as to the two hundred acres embraced by said trust, as well as to the benefit of his said $2,000.00 as against the plaintiffs' said judgments, or either of them, and the lien or liens thereof, as no injustice will be done thereby; and the court erred in not so ascertaining and declaring in its decree, in so far as it provided for the sale of said five hundred and sixty acres of land therein.

Again, the court has ascertained the liens and priorities of the judgment-creditors in a very unsatisfactory and unintelligible manner. Some of the said judgments do not appear to have ever been docketed. Some of the lands are situated in Barbour county and some in Up-

1879
Special Term.

McClaskey &
Crim *et al.*
v.
O'Brien *et al.*

shur, &c., and some of the judgments were rendered in one county and some in another. A considerable quantity of the lands, that were unsold at the time of Hoff's purchase and conveyance to him and the recordation of his deed, appear to have been conveyed to other persons since that time and since the rendition of some of the judgments. Now the judgments, which were not docketed according to law, so as to become liens upon the lands conveyed to these subsequent purchasers for value, are not liens thereon, unless such purchasers had notice of such undocketed judgment or judgments; while those which were properly docketed and in proper time are. The court should have ascertained the liens of the judgment-creditors upon the lands yet unsold, and which of the judgments, if any, are liens on the lands that had been conveyed, and the order in which the conveyed lands were liable and should be sold, and the amount for which each conveyed tract is liable. The lands unsold should be exhausted before the conveyed lands are sold, so far as practicable. Some of the judgments may be docketed in Barbour county and not in Upshur; and therefore some of them may be liens on conveyed lands in one county and not in the other, &c. But the court after having stated the priorities, &c., in the unsatisfactory manner I have indicated, then proceeded to declare in its decree as follows: "And in disbursing the proceeds of sale the court will, if necessary, marshal them according to the interests of the respective creditors." This, of course, in effect left the priorities unascertained and destroyed even what had been attempted in that direction. This, I think, was manifest error. Of course said Hoff will be entitled to receive of the proceeds of said tract whatever may remain after paying him his said trust-debt of $2,000.00 and interest, and the $600.00, the amount of the Anthony Reger trust-debt, with interest, and the amount necessary to pay the plaintiff's judgments, should it become necessary and proper to sell it.

1879
Special Term.

McClaskey &
Crim et al.
v.
O'Brien et al.

For the foregoing reasons it seems to me that the appellant's said assignments of error numbers four, five, six and seven are mostly and substantially well founded.

I now proceed to consider appellant's other assignments of error. The first error assigned is: " The court erred in rendering said decree of the 17th of April, 1871, because persons who appeared to be interested in the causes were not made parties. Lloyd Lownds was interested, but was neither plaintiff nor defendant, nor were W. Crane and Waldo P. Goff, nor Camden and Hoffman, made plaintiffs or defendants. . The suit of Ira Hart is brought for the use of Lloyd Lownds, as we have seen. It runs thus: ' Ira Hart who sues for the use of Lloyd Lownds,' &c. Lownds is not made a party to the original or amended bills filed in that cause either as plaintiff or defendant; nor does it appear that he ever appeared and made himself a party to the cause in any manner; and he is not a party to the cause of McClaskey & Crim. He is certainly an indispensible party in the Hart cause. It is true that at common law one person might sue in his own name for the use of another; but that was allowed for well known reasons. I am not aware of this practice ever having been tolerated in a court of equity. The general rule in equity is, that all parties materially interested in the subject-matter in controversy should be made parties to the cause. There are, however, some exceptions to this rule, but this case as to Lownds is clearly not within the exceptions in the Hart case. There were demurrers filed to the original and amended bills in the case of Hart; and the demurrers were overruled. This was error in the court. I do not think it was necessary in this case to make Crane (sometimes called Craver in the record) a party. The judgment at law is in the name of Craver for the use of Waldo P. Goff. Goff is regarded as the owner of the judgment. Said Goff and Camden and Hoffman seem to be judgment-creditors, and are so reported by the commissioner, and are so recognized in the decree of the court, and neither

Syllabus 18.

1879
Special Term.

McClaskey &
Crim et al.
v.
O'Brien et al

of them is made a party to the original or amended bills in either of these causes. They are proper parties, but whether indispensible formal parties to the bill in such case, I deem it unnecessary to decide now, as the case will have to go back to the circuit court, and such of them as are living and the personal representatives of those who may be dead can be made parties with but little inconvenience or delay. This question has not been fully argued before us; and I prefer to consider and decide it in a case where it is material and necessary that it should be decided and after full argument.

The appellants' second assignment of error is: "*The court erred in giving a decree in favor of the said Crane and Goff, and Camden and Hoffman when neither of them was a party to either suit.*" This assignment of error is substantially covered in what is said upon the first assignment of error.

The third assignment of error is as follows : The court erred in directing that your petitioners, Emmitt J. and Daniel O'Brien, should pay to the administrator of John Davis Day the sum of $1,219.87 with interest ; but should have rescinded the contract between the parties, and directed the said administrator to refund to the said O'Briens the amount paid by them on the purchase of the land. It is difficult to determine what exceptions the court refers to as having been overruled by it in its said decree of the 17th day of April, 1871 ; and I have expressed the opinion that they were not the exceptions printed with the supplemental record signed "T. A. Bradford, attorney for defendants," containing eight exceptions to a report of the commissioner. As before stated, I think from what appears that said eight exceptions were filed to the report of April, 9, 1870, of the commissioner, and were in part sustained by the court and the others waived by the exceptors, for the reasons before stated. But I find other exceptions of defendants filed here with the record, certified by the clerk of said circuit court upon *certiorari* in the same manner as the

eight exceptions aforesaid, signed B. and B.; and as these are the only other exceptions appearing, and as they apply to the commissioner's two last reports considered as but one, I think it is fair to presume they are in fact the exceptions overruled by the court, or at least a part of them. The record shows that defendant, Woods, administrator, &c., of John Reger, deceased, filed his exceptions to the supplemental report of the commissioner, but they do not appear in the record here, and the clerk certifies they are not with the papers of the causes. The said exceptions signed B. and B. are numbered one, four, six and seven, and the seventh exception to the report raises the question now assigned as error in said decree by the appellants' said third assignment of error, of the 17th of April, 1871, and on which the court passed in its said decree.

I have carefully examined the evidence in the cause touching the subject of this assignment of error, and have brought my mind to the conclusion that the depositions of the said O'Briens taken and filed in this cause, touching the alleged contract of rescission and a new contract between them and John Davis Day, deceased, cannot be read in their behalf; that they are under the circumstances appearing incompetent to testify as witnesses upon their own behalf touching said contract of rescission and new contract. See Code of West Virginia of 1868, ch. 130, § 23, div. II. Their incompetency to testify as witnesses in their own behalf to any transaction or communication had with the said John Davis Day, deceased, in relation to such rescission and new contract is so clear under the statute, that I deem it unnecessary to remark further in relation thereto. And disregarding their testimony in relation to said rescission, &c., the other evidence in relation thereto is too vague and indefinite to establish the contract of rescission and new contract as claimed.

The widow of John Davis Day, as we have seen, has released and conveyed her dower in the said tract of land

1879
Special Term.

McClaskey &
Crim et al.
v.
O'Brien et al.

1879
Special Term.

McClaskey &
Crim *et al.*
v.
O'Brien *et al.*

sold to the said Day, deceased, to his legal heirs ; and the deed of trust of said Day, deceased, and wife to Nathaniel Reddick, trustee, &c., seems also to have been re leased as to this tract ; and the legal title unencumbered to so much of the same as is unsold, and to which the O'Briens are entitled under their contracts with said Day, deceased, is now vested in the legal heirs of said Day, deceased ; said unsold land appearing to be four hundred and twenty-nine and one-half acres as ascertained by the court. But said unsold land should have been decreed to be sold clear of the dower of the widow of said Day, deceased, and of said deed of trust and the lien thereof, made by said John Davis Day and wife to Nathaniel Reddick in trust to secure the debt to Richard H. Reddick in said deed of trust mentioned, and such proper decree made, as to secure to the purchaser thereof at the sale under decree of the court the legal title to said land. It seems to me that the appellants' said third assignment of error is not well taken, as the case now stands.

The eighth assignment of error is as follows: "The court erred in rendering a decree for costs in both cases." The matter of costs is not a subject of appeal. Costs are discretionary with the court below to a great extent, though this court sometimes on appeal corrects decrees for costs when clearly improper. In these causes there are some parties to the one not parties to the other, and under the view I have taken in these causes I deem it premature to determine what the court should hereafter do in the matter of costs, as the question may not again be presented. But I deem it sufficient to say, that the court below should see that in cases of the character of these the estate should not be improperly consumed by costs in a multitude of unnecessary suits, so far as it can consistently under the rules and principles governing courts of equity.

The appellant's tenth assignment of error is as follows : "The court erred in directing the payment of Craver

1879
Special Term.

McClaskey &
Crim et al.
v.
O'Brien et al.

and Camden and Hoffman without their being parties to either of the suits." This assignment of error I have already answered substantially in remarks on the first assignment of error.

The eleventh assignment of error is as follows: "The court erred in overruling the exceptions that it did to commissioner Buckingham's report." The fourth exception to the said report of commissioner is as follows: "The defendants, Hoff, Zinn, Zirkle, &c., further except to the report of the commissioner upon the ground that according to the testimony of Joshua Wood, who is the personal representative of John Reger deceased, nothing, or at least but little, is due to said Reger, and the commissioner has reported a balance due to him of $580.50." I have carefully examined the deposition of said Joshua Wood, the son-in-law of said John Reger, deceased, and the paper-writings filed therewith, marked paper number three and paper number four, as contained in printed record at pages one hundred and forty-one, one hundred and forty-two, one hundred and forty-three, one hundred and forty-four, one hundred and forty-five and one hundred and forty-six; and my conclusion is after consideration, that the said judgment of said John Reger was rightfully and properly credited by the commissioner with the sum of $3,000.00 as of the 25th day of April, 1867, paid by the O'Briens to the said John Reger; but that said commissioner erred in not crediting the said O'Briens with the further sum of $345.04 paid by them to the said Joshua Wood, the agent of said John Reger, as of the 1st day of November, 1860, and in this respect and to this extent the court erred in overruling the said fourth exception to said commissioner's report. The other exceptions to the commissioner's report contained in said exception signed B. and B. I think I have hereinbefore answered substantially in general terms, and deem it unnecessary to remark specially upon them.

The ninth assignment of error of the appellants is substantially that the court erred in its said decree in direct-

Syllabus 19.

1879
Special Term.

McClaskey &
Crim et al.
v.
O'Brien et al.

ing the sales of said lands to be made " on some day fixed by law for judicial sales." This error, I think, is well founded, if it amounts to anything in fact; but perhaps it might have been corrected in the court below.

The counsel for appellants have assigned in argument three additional errors, which I will consider consecutively. The first of these is as follows : " The court erred in authorizing the commissioner to sell the lands in part for cash, and not requiring him to give bond." This error, it seems to me, is well grounded. It seems to me that it is irregular in practice and dangerous to authorize a commissioner to make a sale of land for cash in hand, in whole or in part, without providing in the decree substantially that the commissioner shall not receive any money thereunder, until he shall first have given bond with good personally security in an adequate prescribed penalty conditioned according to law.

The second of these errors is as follows : " The court erred in pronouncing the decree that it did on the 17th day of April, 1871, without setting aside the decree of the 6th of March, 1867." It would certainly have been more formal and regular for the court to have expressly set aside said decree of the 6th of March, 1867, as a new case was made to a great extent, and new parties in interest brought into the case by said amended bills filed after the last named decree. But it seems to me that the decree of the 17th day of April, 1871, in effect does set it aside. But as the last named decree must be reversed, I think it proper that the said decree of the 6th of March, 1867, should also be reversed, so that it may not stand in the way of the court at the proper time proceeding to make proper decrees in the causes.

The third of these errors is : " The court erred in directing the sale of the land purchased of Day without providing for getting in the title." It seems to me that this assigned error is covered by what I have said in my remarks upon the appellants' third assignment of error contained in their petition.

1879
Special Term.

McClaskey &
Crim *et al.*
v.
O'Brien *et al.*

I have now disposed of all the errors assigned, or which have been brought to our attention. From what I see in the record before us in these causes, I think it quite probable that some of the judgments, which the commissioner has reported, were docketed in one or both of the counties in which the lands involved are situated, and that the fact may be shown by the proper evidence; and perhaps the failure to file the proper evidence of the docketing may have been the omission of the commissioner to file the same, or if filed, may not have been copied in the record, or may have become lost or mislaid.

In cases presenting such questions as are in involved in these causes it is eminently proper, and in some instances essential, for the judgment-creditors to file official copies of their respective judgments, and copies from the judgment-docket of the counties in which the judgments have been docketed. What I have already said upon this subject elsewhere shows the propriety of this course. It is true that, subject to some qualifications perhaps, if a purchaser for value appears to have had prior notice, such notice will have the same effect upon the purchaser and the lands purchased by him as the docketing of the judgment. But if such notice does not appear, a subsequent purchaser for value is protected against the judgment-creditor's judgment, unless it has been docketed in the time prescribed by the statute.

As before stated, as the decree appealed from in this case must be reversed, it is advisable perhaps as being safest, that the plaintiffs in each case make said Goff, Craver and Hoffman, parties defendant thereto. Certainly, as the pleadings now stand in the Hart case, Lownds should be made a party. The reports of commissioner Buckingham should be recommitted to a commissioner, to the end that a more satisfactory report may be had before a decree of sale is again made in the cause, with proper instructions and directions of the circuit court in relation to the matters to be enquired into and

1879
Special Term.

McClaskey &
Crim et al.
v.
O'Brien et al.

to be reported upon. The appeal taken in these causes from the interlocutory decree of said circuit court at the April term, 1870, must be dismissed, as having been improperly taken, that decree not being appealable.

For the foregoing reasons the decree rendered in these causes on the 17th day of April, 1871, and also the decree rendered in these causes on the 6th day of March, 1867, must be reversed and the appellants, Emmitt J. O'Brien, Daniel O'Brien and Henson L. Hoff, have their costs in this court about the prosecution of this appeal expended against the appellees, William McClaskey and Joseph N. B. Crim, late members and partners trading under the firm name and style of McClaskey & Crim, and Ira Hart, excluding from such costs the cost of the manuscript record and the cost of printing the same, and the other legal costs incurred in this Court in the appeal of David O'Brien and Emmitt J. O'Brien, taken by them from the interlocutory decree rendered in these causes by the said circuit court at the April term, 1870, thereof. And this Court proceeding to render such decree as the said circuit court should have rendered in these causes, it is adjudged, ordered and decreed, that the demurrers filed in the cause of Ira Hart, for the use, &c., against Daniel O'Brien and others be sustained, and that these causes be remanded to the said circuit court of the county of Barbour, with leave to the plaintiffs in each of them to file amended bills making new parties thereto within such time as the said circuit court may deem reasonable, and for such further proceedings therein to be had as may be in accordance with the principles settled in the written opinion of this court, and further according to the principles and rules governing courts of equity in such cases. And it is further adjudged, ordered and decreed, that the appeal taken by the said Daniel O'Brien and Emmitt J. O'Brien, to the interlocutory decree, rendered in these causes at the April term thereof, 1870, be dismissed as having been improperly taken, and that the appellants, Daniel O'Brien and Emmitt J.

O'Brien, do pay to the appellees, William McClaskey, Joseph N. B. Crim and Ira Hart, their costs about their defence of said appeal in this court expended. But this dismissal is without prejudice in any respect to the appeal of Emmitt J. O'Brien, Daniel O'Brien and Hanson L. Hoff, granted the 13th day of March, 1876.

THE OTHER JUDGES CONCURRED.

DECREE OF THE 17TH OF APRIL, 1871, AND THAT OF THE 6TH OF MARCH, 1867, REVERSED AND CAUSES REMANDED. THE DECREE OF APRIL, 1870, AFFIRMED.